WILLIAM GOEDECKE, Guardian, etc., Respondent, v.
THE METROPOLITAN LIFE INSURANCE
COMPANY, Appellant.

### St. Louis Court of Appeals, April 24, 1888.

LIFE INSURANCE—WAIVER OF FORFEITURE.—A life insurance company, having established the custom of sending a collecting agent to each of its policy-holders for the weekly premiums, and having given assurances to the holder and beneficiaries of the policy sued on that the custom would be continued indefinitely, will be deemed to have waived a forfeiture accruing from the non-payment of premiums, when such non-payments resulted directly from its failure to send the collecting agent for the premiums, or to give notice of its intention to discontinue so sending him ; and the beneficiaries will be entitled to recover on the policy, although by the literal force of its terms it had become lapsed for the said non-payments before the death of the insured.

APPEAL from the St. Louis Circuit Court, HON. DANIEL DILLON, Judge.

*Affirmed.*

REYNOLDS & LEWIS, for the appellant : There was nothing said or done by the agents of the defendant to induce plaintiff to believe that a forfeiture would not be insisted on. There was no waiver in this case at any time. *Bergmann v. Ins. Co.,* 2 Mo. App. 262. The breach of conditions of a contract are never considered waived unless intended, or unless the party against whom waiver is set up has so acted as to mislead the other party to his prejudice, thereby working an equitable estoppel. *Diehl v. Ins. Co.,* 58 Pa. St. 443. "Though a life insurance company had been accustomed to give notice when the premium was due, yet a failure to give such notice furnished no ground for claiming relief from a forfeiture for non-payment of the premiums." *Gaterman v. Ins. Co.,* 1 Mo. App. 300.

Payment was a condition precedent to a continuance of the policies, and there is no testimony of any agreement or custom amounting to an agreement that the policies would not be forfeited. *Hanel v. Ins. Co.*, 44 N. Y. 276. The notice at the bottom of the policy, when accepted by the insured, became part of the policy, and plaintiff will be held bound by it as well as other conditions or recitals therein. *Railroad v. Levy*, 17 Mo. App. 501.

MUENCH & CLINE, for the respondent : The right to forfeit a policy of insurance may be waived as stated in the instruction in the manner as set forth therein. *Thompson v. Ins. Co.*, 52 Mo. 469 ; *Harley v. Life Association*, 69 Mo. 380 ; *Hawthorne v. Ins. Co.*, 5 Mo. App. 77 ; *Hayward v. Ins. Co.*, 52 Mo. 187.

THOMPSON, J., delivered the opinion of the court.

This action is brought by the plaintiff as the guardian of six minor children of William Dille, deceased, upon two policies of life insurance, insuring the life of Dille. There were two defences : (1) That Dille died by his own hand. This was abandoned under the statute and need not be further considered. (2) That the premiums, which were payable weekly, were more than four weeks in default, whereby, under the terms of the policy, the policy had become forfeited ; that, after the policy had become so forfeited and after the death of Dille, a person not named (who afterwards turned out to be the plaintiff in this action) tendered to the agent of the defendant the premiums which were in arrears, falsely and fraudulently representing that Dille was alive and in good health, which premiums were received on the faith of such representation ; and further alleging that the revival application was never approved at the home office of the defendant in New York, as is required by the terms of the policies. To this answer the plaintiff filed a reply which, so far as material to be considered, set up that, ever since the issuing of the

policies and up to the time of the death of the assured, the defendant represented to him and caused him to believe that the defendant would regularly send to him one of its agents for the collection of the weekly premiums; that further to induce the deceased to rely upon such representations the defendant did send its agent for the collection of the weekly premiums until the twenty-first day of February, 1887, from and after which time the assured, as the defendant well knew, was unable to bring or to send his weekly dues to the defendant's agent, or to its superintendent or home office, but had reason to believe, and did believe, that the defendant would send for said premiums; that, from and after the twenty-first of February, 1887, the defendant failed further to send any agent for the collection of the premiums, and the plaintiff, then acting in behalf of Dille, did nevertheless search out an agent of the defendant in this city, and did at once, to-wit, on the twenty-ninth of March, 1887, pay to said agent, in behalf of defendant, seven weekly premiums or dues (being one week more than was then payable) upon said policy; that said payment was made without any representation made or warranty required whatever, as to the health or condition of the assured; and that the sum so paid was received by the defendant as the premiums upon said policies, and has ever since been retained and used by it. Wherefore the plaintiff says that the said payment of premiums has been fully ratified, and that the defendant has waived, and should now be estopped from asserting any forfeiture of said policies by reason of any alleged delay in making the payment of the weekly premiums.

The evidence at the trial showed that the policies were made in pursuance of a scheme of life insurance called "industrial life insurance", under which scheme the premiums, amounting to very small items (in this case but fifteen cents) were payable weekly; that the defendant has some fifty thousand policy-holders in St. Louis; that it is the practice of the company to send its

collectors weekly to the houses of its policy-holders to collect these small sums, to save them from the delay and expense of going to the company's office, to pay them ; that the company is able to do this with less expense than would be entailed upon the policy-holders from the fact that many of its policy-holders reside in a single neighborhood, and can, therefore, be visited by its collectors in a short time. The evidence further tended to show that Dille, the assured, on the eighteenth of January, 1887, killed his wife, and also attempted to cut his own throat, but only succeeded in severing his windpipe, so that his wound was not immediately fatal ; that he was thereafter taken, first to the hospital, and, on sufficiently recovering, to the jail, where, after his wound had healed, he died, on the morning of March 26, 1887, from gangrene of the lungs, produced by the blood passing down into the lungs before his wound had healed.   The plaintiff also gave evidence tending to show that, after Dille had thus killed his wife and wounded himself, the plaintiff's wife went to the office of the defendant, paid the premiums down to the twenty-first of February, took with her the premium receipt book, and requested the agent to note the change in the street and number at which their collector should thereafter call for premiums, which the agent did, promising her that she would not have "any further trouble after this", but that their collector would call at the new number, which was her house.   The defendant's collector never called upon her for the purpose of collecting the premiums, although, testifying as a witness, he admitted that he had called at that street and number, but claimed that it was to see a man named William or Williams.

The plaintiff's testimony tended to show that the plaintiff and his wife, as well as the little daughter of the deceased, understood the circumstances attending Dille's life insurance ; that the plaintiff was the brother of Mrs. Dille ; and that, after the unfortunate occurrence of January 18, 1887, the six children of Dille were

taken to the plaintiff's house ; that the plaintiff and his wife fully intended to keep the policies of insurance alive ; and that, for this purpose, the plaintiff went once himself to pay the premiums, but was unable to find the office ; so that more than four weeks elapsed and the policy, according to its letter, became forfeited prior to the death of Dille. The policy having thus, by its terms, lapsed unless there is a waiver or estoppel created by the circumstance of the agent not calling to collect the premiums, the plaintiff, on the twenty-eighth of March, 1887, after Dille had died in the jail, went to the defendant's office and paid the premiums which were in arrears, $1.75. On the following day he again went to the defendant's office and notified them of the death of Dille, whereupon they tendered back to him the $1.75, which he refused to receive. Although the plaintiff endeavored to shuffle around that fact, the evidence clearly showed, we think, that, at the time when he paid the arrears of premium, he had heard that Dille had died in the jail. The case did not turn upon the question whether these premiums had been paid before the death of Dille ; it is indisputable that they were paid after his death, and it seems to have been conceded that the plaintiff knew that fact. This being so, the payment of the premiums did not operate to revive the policy, provided it was lapsed at the time, and so the court instructed the jury.

The court refused an instruction in the nature of a demurrer to the evidence, and submitted the case to the jury upon the only contested issue which remained at the close of the evidence, which was, whether the prompt payment of premiums had been waived, or whether the defendant was not estopped to insist that the policy had been forfeited by reason of the failure promptly to pay the premiums, in view of the fact that, after the fatal injury which Dille had inflicted upon himself had become known, it had ceased, through its collector, to call for the weekly premiums according to

its previous practice with Dille, and according to its universal practice with its other policy-holders in St. Louis. With reference to this question, the court gave the following instructions, the first at the request of the plaintiff, and the two following at the request of the defendant:

"1. If the jury find and believe, from the evidence, that either at or after the time of writing the policies in question the defendant, through its authorized agent or agents, represented to said William Dille, or to those whom it knew to be acting for him, the defendant would cause the premiums falling due under said policies to be regularly called for by its agents; that the defendant, through its agents, either knew or were informed of the place where such premiums could be collected, and that such premiums were ready to be paid or tendered to such agents at such place, had he called for them, then the defendant cannot insist upon forfeiture of said policies by reason of failure to pay the last seven weekly premiums at the maturity thereof, or within four weeks thereafter. Provided, the jury believe that the persons having in charge the payment of said premiums in good faith believed that defendant would cause said premiums to be called for, and that said policies, or either of them, would not be forfeited for, or on account of, unpaid premiums that had not been called on."

"2. The court instructs the jury, although you may believe, from the evidence, that it was the habit and custom of defendant's agents to call upon the policy-holders for the weekly premiums due upon their policies, yet the burden is upon the plaintiff to show that he and those whom he represents relied upon this custom and failed to pay the premiums, honestly believing that their policies could not be forfeited unless the agent called for the premiums, and that they were under no obligations to pay any of the weekly premiums unless called on to do so by the collector or agents of the

defendant, and that they at all times acted upon that belief."

"3. The court instructs the jury, although you may believe from the evidence that it was the habit and custom of defendant's agents and collectors to call upon the policy-holders for the weekly premiums as they became due, yet before the plaintiff can set up and rely upon such custom and habit as a waiver of the rights of defendant to have said policies forfeited for a failure to pay the premiums for more than four weeks, you must find and believe from the evidence in the cause that the said Wm. Dille, or those acting for him actually relied at all times upon such habit or custom, and that they in good faith, on account of such habit or custom, thought and believed that it was not necessary for them to pay, or offer to pay, any of the premiums at any time unless the agent or collector called for the same; but if you find from the evidence that they did not at all times rely upon such custom and habit, but that he knew, or had reason to believe it was their duty to seek out, if possible, the agents of defendant and pay the premiums in order to keep up said insurance, then plaintiff cannot recover by reason of the failure of defendant's agents to call for premiums."

The court refused several other instructions tendered by the defendant. One of these advised the jury, in substance, that the notice on the face of the policy that "the neglect of a collector to call will not be deemed an excuse for non-payment," precluded the plaintiff from setting up such neglect as a waiver or excuse in this case, after the lapse of four weeks. The others, so far as they were not covered by the instructions given, proceeded upon the like theory, that the neglect of the collector to call would not excuse a failure on the part of the assured to pay the premiums except for the period of four weeks.

I. We see no error in refusing to instruct the jury to return a verdict for the defendant. If the plaintiff's evidence was to be believed, Dille, during his lifetime,

had been in the habit of paying his premiums to the collector of the defendant when he called at Dille's house for the purpose of collecting them. After Dille killed his wife and attempted to kill himself, and the plaintiff took Dille's children to his own house to care for them, the plaintiff, according to his evidence, expected and endeavored to keep the policy alive, but allowed the four weeks of grace given by its terms to expire, by reason of relying upon the promise made to the plaintiff's wife, that the collector of the defendant would call at her residence to collect the premiums, which promise was not kept. This, if true, was evidence from which the jury were authorized to find that the defendant had waived the prompt payment of the premiums. It was further a course of conduct which estopped the defendant from afterwards insisting upon a forfeiture of the policy. The fact that the policy contains notice that the neglect of a collector to call, will not be deemed an excuse for non-payment, would not operate to override the subsequent and universal course of business pursued by the defendant; but its subsequent course of business would operate to override and displace such a clause in its policies. That the practice of a life insurance company in waiving the prompt payment of premiums will estop it from insisting upon a forfeiture of a policy when it becomes its interest to forfeit it, has been several times decided in this state. In *Thompson v. Insurance Co.*, 52 Mo. 469, it was held that, though a contract of life insurance requires prompt payment of the premiums on pain of a forfeiture of the policy, yet the insurer waives this condition by the practice of receiving premiums after they become due. This decision was followed by this court in *Hanley v. Life Ass'n*, 4 Mo. App. 253, which decision was affirmed by the Supreme Court. 69 Mo. 380. In giving the opinion of this court, Hayden, J., said: "If legal rights accrue to a party, that party, where a forfeiture is concerned, should evince his determination at some

time and in some way to take advantage of the forfeiture. If, with full knowledge, he, through a long time, keeps the contract in such a state that he can enforce it at his will, as made, it is not unreasonable to hold that such conduct on his part is evidence tending to show that, according to his intent and understanding, the contract, as made, is alive. The continuing power of declaring a forfeiture, prolonged through an indefinite time, to be exercised or not as self-interest dictates, it is obviously the policy of the law not to favor. It is strictly according to legal principles and in furtherance of justice, to hold that slight acts are sufficient, in such cases, to prove a waiver. Regard must be paid to the element of reciprocity. If a company keeps things open, so that it can at any time claim its right to premiums, why should not the policy be regarded as existing in respect to its liabilities? If it be said that, by virtue of an express clause in the policy, it becomes commuted as soon as the pay-day is past, the position is more objectionable than that originally taken; since one effect of this clause is to give the insurer a greater facility for keeping the rights of the insured in suspense. If the forfeiture, whether full or partial, occurs *eo instanti*, the insurer should act accordingly. If his own acts show that he does not regard it as having so occurred, he cannot complain that those acts are made evidence against him. It is no hardship that he should be made to take one ground or the other." In giving the opinion of the Supreme Court in the same case, Henry, J., said: " It was also shown that, on several occasions, when previous semi-annual payments became due, Hanley was indulged by the company and permitted to make the payments after they became due, defendant having taken no step to declare the policy forfeited or commuted. If it was the intention of the company rigidly to enforce against Hanley the provisions of the policy in regard to the non-payment of the semi-annual premium due August 1, 1872, it was

their duty, and fair dealing required them, to notify him of such purpose. They neither notified him nor made any entry on their books or on the policy, then in their possession as collateral security for loans to Hanley, that it had become and would be treated as a commuted policy ; and, considering their conduct and course of dealing with respect to prior semi-annual premiums, it would be tolerating gross injustice to allow the defense relied upon. * * * The provision in the policy was inserted for the benefit of the company, which could waive a strict compliance, as well by any other act indicating such an intention, as by a formal written instrument to that effect.''

This ruling, although it applies to a different ground of waiver from that which is set up in this case, furnishes the governing principle of this case, and shows that it was correctly submitted to the jury by the trial court. The defendant had a general and well understood custom in St. Louis of sending its collector on regular tours to the residences of its policy-holders, people belonging presumably to the poorer classes, for the purpose of gathering up the pennies and dimes which constituted the weekly premiums which kept their little policies in force. Could it discontinue this custom in respect of any policy-holder without giving him any notice of such discontinuance ? Could it discontinue it after the policy-holder had become disabled through sickness, insanity, or wounds, from coming to the defendant's office to make the payment of 'the premiums, without giving notice to him, to other members of his family, or to his relatives, who were interested in keeping alive the policy ? Could it keep up the practice of collecting the premiums by its agent as long as the policy-holder was well and as long as it was to its interest to keep the policy in force, and then quietly discontinue collecting them as soon as he became ill and as soon as it became to its interest not to keep it in force ? These questions answer themselves.

It was argued at the bar that, if the holder of such

a policy could excuse his neglect to go to the defendant's office and pay the premiums for seven weeks, still keeping the policy in force, he could do it for seven years. The answer to this has already been given. If the defendant would cease its course of business and cease to call to collect premiums by its regular collectors, it is bound in fair dealing to notify the policy-holder of its intention so to do. If the policy-holder receives no such notice, relies upon the practice of the collector to call, and is thereby lulled into a feeling of security under which he forgets or omits to go to the defendant's office and pay the premiums, is the policy to be forfeited when an event arrives which makes it to the interest of the defendant to forfeit it, although, as the evidence here shows, it would not have been forfeited if that event had not happened? Notwithstanding what had happened, on the very day that Dille died, the payments being near seven weeks in arrears, the defendant holds out its hand and takes the premiums; but, learning of the death of Dille, it attempts to insist upon a forfeiture of the policy which has arisen, according to the plaintiff's evidence, in consequence of the failure, which the jury were entitled to presume was intentional, to call for the weekly premiums, according to the previous practice.

The contention of the defendant, that a proper construction of the policy is, that the assured might rely upon the collector of the defendant calling to get the premiums for four weeks after they should become in arrears, but not later, seems to be a begging of the whole question, since it would be tantamount to holding that he might rely upon it so long as it was not necessary to rely upon it, but that he could not rely upon it after it really became necessary to rely upon it. The policy could not in any event by its terms become forfeited until the weekly premiums had become four weeks in arrears. The conduct of the company was either a waiver of its right to insist upon a forfeiture, or it was not. If it was a waiver of such right, then

the forfeiture never attached. We know of no principle of interpretation by which we can take the language of the policy and the course of business of the defendant and piece out such a conclusion.

The instructions which were given fairly submitted the case to the jury upon the ground on which it was contested. Those which were tendered by the defendant and refused were either covered by those which were given, or else embodied the interpretation of the policy just spoken of. Some other errors have been assigned, but not argued, and we see nothing in the record which requires further observation.

All the judges concurring, the judgment is affirmed.