## No. 5754

## Mary J. McCorkle et al. *v.* The Texas Benevolent Association.

1. Mutual Insurance Company—Notice.—The by laws of the T. B. A. required that notice of its assessments shall be sent to each member, and that "any person who shall fall in arrears for dues or contributions, after thirty days notice, shall cease to be in good standing, and shall forfeit all rights and claims to any and all benefits of the association." It was the custom of the officer charged with the duty to mail such notice to each member. *Held* that a reasonable construction of the by laws required that notice be in fact given to a member before a forfeiture would result from a failure to pay dues, etc., and that mailing to a member through the post office was not such notice.

2. Same—Regular Insurance Company.—The rules and principles applicable to ordinary insurance companies apply to mutual benefit associations such as the T. B. A.

3. Act of Officer.—An act or promise of an officer superintending the business of a mutual benefit association, although beyond his power as defined in the by laws of the association, if acted upon by a member, will bind the company.

4. Estoppel.—See facts held to estop the T. B. A. from denying the privileges of membership to one who was claimed to have forfeited his membership.

Appeal from Travis.  Tried below before Hon. A. S. Walker.

The opinion gives the facts discussed.

*Walton, Hill & Walton,* for appellants: 1. Mailing the notice was not of itself notice.   (38 Am. Rep., 478; Herschel on Law of Fraternities, 54; 15 N. W. Rep., Mich., 1883, 452.)

2.  The forfeiture, if any was waived.    (Insurance Company v. Eggleston, 96 U. S., 572; Roswell v. Eq. Aid Union, 13 Fed. Rep., 840.)

3.  The court erred in not finding as a conclusion of law that the Texas Benevolent Association was, by its own acts and the acts of its officers and business manager estopped from denying the membership and good standing of Calvin McCorkle at the time of his death, such acts of estoppel consisting in

*a.*  The agreement of the business manager, Parrott, to notify Calvin McCorkle by draft upon him.

*b.*  The subsequent acts and course of business in that respect pursued and followed under said agreement between McCorkle and said association, and said McCorkle's evident reliance thereon until a date and time when the claim by said association that said McCorkle, on account of its business manager's failure to draw upon him, was not in good standing, could not be met by McCorkle with compliance with the terms of reinstatement then imposed.

*c.*  The subsequent demands and receipts of payments by said McCorkle of dues as a member of said association in good standing.

As to waiver of forfeiture and estoppel.   (Masonic Mut. Ben. Ass'n v. Beck, 77 Indiana, 204; s. c., 40, Am. Rep., 295; Johnson v. Spies et al., 114 Illinois, 463; Nat. Ben. Ass'n v. Jackson, Id., 533; Van Houten v. Pine, 38 New Jersey Equity, 72; Roswell v. Eq. Aid Ass'n, 13 Fed. Rep., 840; Edmann v. Sons of Hermann, 44 Wisconsin, 376; Mason Mut. Life Co. v. Gibson, 52 Georgia, 640.)

Whether such associations are held by the law as insurance companies.   (Kentucky Masonic Ins. Co. v. Miller, 13 Bush., 489; Diebrick v. Madison Rep. Ass'n, 45 Wisconsin, 79; Mason's Ben. Soc. v. Winthrop, 85 Illinois, 537; May on Ins., secs. 5, 50a; Herschel on Fra. and Soc., 34.)

As to agent's authority directing mode of payment.   (May on Ins., sec. 134.)

As to requirement of certificate of health to reinstate.   (Appleton v. Phœnix Co., 59 New Hampshire, 540; s. c., 47 Am. Rep., 222.)

MALTBIE, JUDGE.    The appellants are the widow and minor heirs of Calvin McCorkle, and are entitled to recover of appellee, the sum of five thousand dollars, on a benefit certificate in the Texas Benevolent Association, unless Calvin McCorkle, at the time of his death, had forfeited his right to membership in the association on account of non-payment of dues. R. B. Parrott was the general manager of the corporation, and under its by laws was authorized to collect all moneys due the association from its members, with power to appoint deputies for this purpose. It was also made the duty of the manager to keep all accounts between the association and its members, to notify all members when contributions are due, receipt for all money paid, and keep a roll of all members in good standing.

The by laws provide that "notice of such contributions shall be sent to each; and every member failing to pay such contributions within thirty days from date of notice, shall forfeit his or her claim to any and all benefits of the association."

By a subsequent paragraph it is further provided, that "any person who shall fall in arrears for dues or contributions, after thirty days notice, shall cease to be in good standing, and shall forfeit all rights and claims to any and all benefits of the association, but such member can be reinstated by applying for proper forms to the business manager, being examined by a regular physician, and found by him in sound health," etc.

It will be seen that the manner of sending the notice is not prescribed. And we think the two sections of the by laws in reference to notices, set out above, fairly construed, must be held to mean that notice shall be given of an assessment before a failure to pay shall work a forfeiture of the rights and benefits of a member; and that the mere sending of a notice by mail, unless it is received, would not work a forfeiture. Courts should not construe a clause in a policy of insurance so as to entail a forfeiture unless it is plain that such construction is correct. The appellee claims that Calvin McCorkle forfeited all right to any benefit, as a member of the association, on account of his failure to pay a mortuary assessment levied on the seventh of April, 1883; and that he was never reinstated as a member.

It having been shown that McCorkle was a member of the association in good standing it devolved upon appellee to show that his rights had been in some way forfeited. In order to

show such forfeiture R. B. Parrott, the association's manager, testified that notice of the mortuary assessment of April 7, 1883, was duly mailed to all members, including Calvin Mc-Corkle, that he was suspended on the seventh of May by operation of law and that he had never been reinstated.

The fact of mailing the notice to McCorkle was the only testimony relied on to show that he had notice that the assessment had been levied. A letter from McCorkle to R. B. Parrott, dated October 17, 1883, strongly tends to show that no notice of the assesment was ever in fact received by him. The question arises whether the mailing of the notice is sufficient to work a forfeiture of appellant's rights. In the case of Costner v. The Farmer's Mutual Insurance Company, 50 Michigan, 257, the language of the charter being that the member is to be "notified by the secretary or otherwise, either by circular or verbal notice." It was held that it was necessary that a member should have actual notice of an assessment before he could be deprived of his right to protection under his policy. In that case the court say: "In principle it is not easy to distinguish the nature of the required notification from the office and object of the service of process and there would seem to be as much reason for real notice in the case in question as in the case of an action. The destruction of a mail or accidents preventing the delivery of matter or even a considerable delay might, at any time, without fault of persons insured, eventuate in wide spread loss and injustice." The rule laid down by the Michigan court, we think, is fair and just to both parties and should be followed. To deprive a person of his property rights without any notice is contrary to reason, and such a claim should not be enforced by the courts unless the terms of the contract plainly require it. As before stated we are of opinion that the by laws in question construed as a whole do not require a member to be suspended unless he is in some way notified that an assessment has been made against him.

No reason is perceived why an association such as this, which purports to have been organized for the mutual protection of its members, which acts through its regular officers under a charter and by laws, and resorts to assessments on its living members to procure funds to discharge its obligations to its officers, and such of its members as may die, should not be governed by the rules of law that are applied to ordinary life

insurance companies.    And it is said that the courts have, with great uniformity, applied to associations such as this, rules and principles applicable to the contract of life insurance.    (May on Insurance, sec. 550a, p. 843, and authorities cited in note.)

It is claimed by appellants, that The Texas Benevolent Association is, by its own acts and the acts of its officers and business manager, estopped from denying the membership and good standing of Calvin McCorkle at the time of his death. And in support of their proposition they introduced in evidence a letter from Calvin McCorkle to R. B. Parrott, under date of October 17, 1883, as follows:

Dr Capt. : I received a notice (printed) to be filled out for reinstatement in T. B. A., which I am at a loss to understand. I received a notice of dues from your office and at once paid it to Mr. Chadwick here, who said he would remit with his own he had to send.    I have received no other demand on me from T. B. A., and can not understand why I am suspended.    I am anxious to retain my membership, and so expressed to you, and as I thought it was understood between you and I that you would draw on me through bank at any time that I was in arrears, or likely to be.    Believing that we understood each other in this arrangement, I have not taxed my memory with payments.    Let me hear from you.

Your friend,<br>Calvin McCorkle.

In reply to this letter, under date of nineteenth, R. B. Parrott, as manager of the association, after stating the amount of McCorkle's indebtedness and also that a renewal could be effected by paying this sum and furnishing a certificate of health according to a blank form inclosed, proceeds as follows: "Our promise to draw on you at sight was of course made in good faith, but, with our large and rapidly increasing membership, the noting of individual points has become utterly impossible.    Notices in the first place are sent thirty days in advance, and it is taken for granted that all payments will be met.    While the assessment is pending, our office force is kept constantly busy, and, as the greatest rush comes in closing up of an assessment, there would be little opportunity of running through an entire set of books and follow individual instructions.    Moreover, were we to comply with every request to

draw at sight, and parties fail to protect, the business manager, becoming personally responsible in the premises, would be ruined by a single assessment." It was also shown that Parrott had on two occasions drawn drafts on McCorkle to cover assessments against him, which were duly honored. In rebuttal of this, Parrott testified that, at the time McCorkle became a member, he fully explained the by laws of the association to him and impressed upon him the necessity of making prompt remittances. He further testified that McCorkle then said to him: "If I fail to remit, you draw on me;" to which the witness replied that, as business manager of the defendant association, he could not make any such arrangement, and that, if he drew on him at all, it could only be as an individual, and that the witness could not and would not obligate the association to do any such thing. The witness is positive that he never drew on McCorkle except when specially requested by letter or telegram, and that he never had any general arrangement for drawing money, even in the individual capacity of the witness, for assessments and dues."

It will be seen from the extract above, that while the manager of appellee in his testimony on the trial qualifiedly admits that he may have made an arrangement to draw on McCorkle for his dues and assessments, he attempts for the first time to make it appear that he made it, if at all, in his individual capacity. Whereas, in his previous letter to McCorkle he admits without qualification that he did promise to draw, and that the promise was made in good faith, but that it had become inconvenient of performance. It may be conceded that Manager Parrott informed McCorkle that the association would not be bound by any drafts that he might draw on McCorkle, and yet McCorkle may well have relied on the promise that he would draw. A reasonable construction of the declaration of Parrott, to the effect that the company would not be bound by any draft that he might draw on McCorkle, is that if McCorkle failed to pay the draft the company would not be bound by reason of the fact that Parrott had drawn it, but that McCorkle would be in the same attitude in reference to the company as though no draft had been drawn. It seems that McCorkle was a traveling man, residing in Austin, but that he was absent from home much of his time; and an arrangement by which Parrott, in his individual capacity, should draft on McCorkle to meet assessments or in anticipation of them, would, we think,

be in the apparent scope of the authority of appellee's general manager. It is clear that McCorkle was misled by representations made by the manager of appellee in furtherance of its business; that he relied on the representations, and in consequence thereof failed to pay his mortuary assessment that he would otherwise have paid, and that he was for that reason suspended; and that after his suspension it was impossible to comply as to appellee's requirement that he should furnish a certificate of health, for the reason that his health had become impaired; but he did offer to pay up all dues.

In view of these facts, we are of opinion that appellee is estopped to insist that at the death of McCorkle he had forfeited his benefit certificate in the association.

"Any agreement, declaration or course of action on the part of an insurance company which leads a party insured honestly to believe that by conforming thereto his policy will not be forfeited, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." (Insurance Company v. Eggleston, 96 U. S., 577; Appleton v. The Insurance Company, 59 N. H., 544, et seq.) In this instance, in addition to his promise to draw, Parrott had actually drawn the drafts on McCorkle, which had been honored, and the association should not be permitted to profit by the failure of its manager to carry out his agreement in reference to its business.

For the errors indicated, we think the judgment should be reversed and remanded.

*Reversed and remanded.*

Opinion adopted May 15, 1888.

STAYTON,
*Chief Justice.*

[Justice Walker not sitting.]