MUTUAL LIFE INS. CO. OF NEW YORK v. DAVIS et al.

(Court of Civil Appeals of Texas. Dallas. March 1, 1913. Rehearing Denied March 22, 1913.)

1. INSURANCE (§ 353*)—LIFE INSURANCE—NONPAYMENT OF PREMIUMS—FORFEITURE.

A debtor assigned his insurance policy to a creditor, who also held the policies of several other debtors, and the insurer made it a custom to send his collector for the premiums, and in several cases where the premium was not paid at the bank gave the assignee notice of the nonpayment of the receipt; the general agents of the company admitting in one case that they were bound to present the receipt in payment. *Held* that, where nine payments had been made on a ten-payment policy, which then could be converted into a certain sum of paid-up insurance, the insurer was not entitled to enforce a forfeiture for the nonpayment of the tenth premium, which had never been demanded; its agents knowing that the creditor kept no record of when the premiums were due.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 905–907, 1032, 1033; Dec. Dig. § 353.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**2. INSURANCE (§ 349*)—FORFEITURE—LACHES.**

Where a creditor, to whom a debtor had assigned an insurance policy, did not pay the last premium due because of the insurer's failure to present the receipt for payment in accordance with its custom, the failure of the creditor to discover the nonpayment of the premium for some years, it appearing that the debtor was still alive, and the policy had merely been filed away, does not bar him on the ground of laches; the insurer being bound to take the initiative in demanding payment of the premium.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 891, 895–902, 913; Dec. Dig. § 349.*]

**3. INSURANCE (§ 371*)—FORFEITURE—WAIVER.**

Where a forfeiture of an insurance policy is once waived because of the course of dealings between the parties, it cannot later be interposed to defeat recovery.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 943–946; Dec. Dig. § 371.*]

**4. INSURANCE (§ 664*)—ACTIONS ON POLICIES —EVIDENCE.**

In an action on a life policy, which the insurer claimed was forfeited because of the assignee's failure to pay the last premium, evidence showing that it was the insurer's custom to present the premium receipts for payment, and that it had done so in the case of other policies held by plaintiff on the life of the insured and others, is admissible.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1687, 1688, 1699; Dec. Dig. § 664.*]

**5. APPEAL AND ERROR (§ 1051*)—REVIEW— HARMLESS ERROR.**

In an action on an insurance policy, where recovery was sought to be defeated on the ground of nonpayment of the last premium, the admission of improper evidence showing that it was the custom between the insurer and the assignee of the policy for the insurer to demand payment of the premiums is harmless error, where there was sufficient competent evidence to establish that custom.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

Error to District Court, Dallas County; Kenneth Foree, Judge.

Action by Alfred Davis and others against the Mutual Life Insurance Company of New York. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

Locke & Locke, of Dallas, for plaintiff in error. Etheridge & McCormick, of Dallas, for defendants in error.

CRAWFORD, J. This suit was instituted on June 17, 1907, by Alfred Davis et al. against the Mutual Life Insurance Company of New York to compel the defendant to accept a premium of $375.50 on a policy of insurance on the life of one L. J. Thompson, which matured October 27, 1899; plaintiff tendering the amount of such premium, together with all interest thereon. On December 16, 1909, an amended petition was filed, containing an alternative prayer for the recovery of premiums paid, etc. On April 17, 1911, the assured died, and on August 24, 1911, plaintiff filed his second amended petition, seeking a recovery upon the policy, less

the said premium, and all interest thereon. The company defended on the grounds that the policy lapsed for nonpayment of the premium due on October 27, 1899; that the sum theretofore held as reserve against said policy was distributed to other policy holders in the form of dividends; that no tender or offer to pay said premium was made for more than 7½ years afterwards; and that the plaintiff was estopped and barred by limitations from asserting its cause of action. Upon the conclusion of the testimony both parties, in open court, agreed that the case depended upon the questions of law, and that it required an instructed verdict one way or the other, and each of the parties stood solely upon their respective requests for peremptory instruction, with the result that the court below instructed a verdict in favor of the plaintiff.

### Conclusions of Fact.

The plaintiff was the assignee of three policies issued by the defendant, two on the life of J. L. Thompson and the other on the life of D. C. Brown. All of these policies were taken out many years prior to October 27, 1899. The policy in suit was a ten-payment policy; whereas the policy on the life of D. C. Brown was an ordinary life policy. At the time of the issuance of the policy in suit, and for several years thereafter, the defendant maintained a local agency in Dallas, and said local agents collected thereon the initial and three subsequent premiums by the presentation to the plaintiff at its office of the premium receipts therefor. Said local agents likewise so collected the premiums on the other said policies. After the discontinuance of the Dallas agency, the defendant's Texas business was transacted by Chamberlain & Co., its general agents in San Antonio. Said general agents were authorized by the company to exercise their own discretion as to the method of collecting premiums. Said general agents caused the remaining premiums, up to and including the ninth one, to be collected by the presentation of the premium receipts to the plaintiff at its office. Likewise, the premiums on the other Thompson policy and on the D. C. Brown policy were collected in the same way. Plaintiff in every instance promptly paid every premium receipt on all of the policies upon presentation. The tenth and last premium receipt was never presented, and was therefore not paid. Plaintiff was abundantly solvent, able, and desirous of maintaining the policy in force. It had paid nine premiums thereon, aggregating $3,379.50. It held the policy to secure a large indebtedness from J. L. Thompson, the assured therein, and Thompson was wholly insolvent, and plaintiff had no security other than said policy. The policy contained a provision entitling the plaintiff to a paid-up policy of $4,500 after the

payment of nine premiums, upon demand and without further payment. Plaintiff did not demand such paid-up policy, because it was not its purpose to abandon the contract, but to go forward with it, pay the last premium, and maintain the policy in force for its face value. The premium receipt for the tenth and last premium upon the policy in suit, which premium matured October 27, 1899, was by the defendant transmitted to the National Bank of Dallas; but in its letter of transmission it did not advise said bank that the plaintiff was the assignee of the policy, nor that the receipt should be presented to the plaintiff for payment. Said bank, without presenting said receipt to the plaintiff for payment, returned the same to the said general agents at San Antonio, and said general agents thereupon, but without notification to the plaintiff, forwarded said unpaid receipt to the company; whereupon the company, unawares to the plaintiff, made an entry of forfeiture of the policy. Plaintiff did not order the defendant to send said receipt to the National Bank of Dallas. It was not advised that the defendant had done so; neither did the plaintiff know that said receipt had been by said bank returned unpaid to said general agents.

As we view the evidence disclosing the course of dealing which uniformly obtained between the parties, the defendant owed plaintiff the duty to present the premium for collection at plaintiff's office. This is rendered certain by the undisputed testimony showing that all premium receipts upon all of the policies had been so presented to the plaintiff and paid by it, with the exception of the premium receipt in question. The correspondence between the parties definitely shows that the understanding of each of them in that respect was the same. The plaintiff understood that it would pay upon presentation of the premium receipt at its office, and the defendant understood that such premium receipt should be so presented to the plaintiff. The testimony further shows that it was the duty of the defendant, in the event any premium receipt upon any of said policies should, for any reason, be returned unpaid to its general agents in San Antonio, to notify the plaintiff of that fact and afford it an opportunity to pay the same. Such was the course that such general agents pursued, both before and after the event in question. A premium which matured on the other Thompson policy in September, 1896, was not paid. The premium receipt in that case, for some unexplained reason, was returned to the said general agents unpaid; whereupon said general agents called plaintiff's attention to its apparent delinquency, with the result that it was ascertained that said premium receipt had never been presented, and that, as matter of fact, plaintiff was not in default, and the payment of that premium was accepted by the defendant on October 20, 1896, as shown by the letter of said general agents to

plaintiff of that date. In that letter said general agents stated: "We have made careful notation now on our register that this renewal must be collected through your office, and we trust in future there will be no trouble and regret there has been in this case." The testimony of W. F. Riddle, the defendant's agent, with reference to the contents of the policy register, is such as to create a necessary inference that said general agents had a similar notation thereon with reference to the policy in suit. To the unbiased mind the conclusion is irresistible that, had said general agents notified the plaintiff that the National Bank of Dallas had returned the premium receipt in question unpaid, plaintiff would have promptly paid the same, protesting, as it did in the previous similar occurrence, that the delinquency was attributable solely to the failure to present the premium receipt to it at its office for collection. A similar occurrence arose thereafter with reference to a premium on the D. C. Brown policy. That premium matured July 3, 1902, and the receipt therefor, like the one in question, was, for some reason, returned unpaid to said general agents. Said general agents did not transmit such unpaid premium receipt to the home office of the company, nor was there any forfeiture attempted or asserted, because of the nonpayment of that premium. Upon the contrary, on August 27, 1902, said general agents advised the plaintiff of the nonpayment of that premium, and on September 8, 1902, the plaintiff, responding to such notification, said: "We beg to say that we have always been in the habit of paying these premiums through the bank here, and if there is any premium past due, it is because it has never been presented to this office for collection." This constituted a plain and frank statement of the plaintiff's understanding of the method of collection and payment of premiums. The said general agents responded to that letter. They took no issue with the correctness of the plaintiff's statement, but responded by saying that the certificate of health required by the policy would be waived upon the plaintiff's statement "that the bank failed to present the receipt as usual." That premium was in due course promptly paid, as was the overdue premium on the other Thompson policy in 1896.

We therefore find that the defendant was at fault, in the first instance, in not causing the premium receipt in question to be presented to the plaintiff for payment, and in failing, in the second instance, to notify the plaintiff that the National Bank of Dallas had returned said premium receipt unpaid. However, said general agents, instead of either causing said receipt to be presented, or of notifying the plaintiff after its return unpaid, transmitted the same to the company direct, and the company, in turn, but without notification to any one, made an entry of forfeiture. The course of conduct pur-

sued by the general agents of the company with reference to the particular premium in question is repugnant to its course of dealing with reference to all other premiums upon all three of the policies named. Defendant's general agents never notified the plaintiff that they would cease presenting the premium receipts at plaintiff's office for payment; nor did they ever advise the plaintiff that they would cease to notify it, in the event any premium receipt should, for any reason, be returned to them unpaid.

The correspondence in 1896 with reference to the apparent overdue premium on the other Thompson policy is significant of the understanding of both of the parties some three years prior to the maturity of the premium in question, and the subsequent correspondence in 1902 discloses without dispute, and that at a time when no controversy existed between the parties, that the defendant owed the plaintiff the two duties above specified; the first one being to present the receipt for payment, and the second one being to call their attention to any receipt that should be returned unpaid.

We have not only the acts of the parties several years prior to and several years subsequent to the event in question, but we also have undisputed evidence of their acts almost contemporaneously with the event. It undisputably appears that a premium matured on the other Thompson policy on September 17, 1899, and that such premium was collected by the defendant by causing the receipt to be presented to the plaintiff at its office. Such receipt was produced, identified, and the fact of its collection established by the testimony of Frank N. Mallory, one of the bank's collectors. That transaction occurred just a month and nine days prior to the maturity of the premium in question. On July 3, 1899, a receipt for the premium maturing on that day on the D. C. Brown policy was presented to the plaintiff's office and was paid by it, and after October 27, 1899, the defendant continued to collect from the plaintiff in the usual and customary method the premiums on the other Thompson policy, and also on the D. C. Brown policy. The D. C. Brown policy, as stated is an ordinary life. The assured therein is still alive, and the plaintiff is still paying the defendant premiums on that policy. Plaintiff also paid all premiums on the other Thompson policy up to the death of the assured. The defendant, in sending the premium receipt in question to the National Bank of Dallas, did so upon its own initiative, but plaintiff did not request the defendant to send said receipt to said bank. The collectors of the bank, in presenting the premium receipts on the said policies to the plaintiff for payment, were acting for and on behalf of the insurance company, and were not agents of the plaintiff. Plaintiff kept no record of any of the maturities upon any of said three policies, but depended upon the presentation by the defendant of the receipt to it at its office for payment. Plaintiff rightfully assumed that the defendant would send its collector when any premium upon any of said policies should mature; and as defendant failed to send its collector for the tenth and last premium on the policy in suit plaintiff was lulled into believing that the policy had been paid up, as the defendant had ceased to make any further demands for the payment of premiums thereon. Plaintiff filed the policy in suit away in its vault; it had sustained no loss thereunder; the assured was yet alive; and it had no occasion to inspect or examine the same. In 1907, however, it did discover, for the first time, that said premium appeared to have not been paid, and thereupon it made inquiry of the defendant, and the defendant then, for the first time, to the knowledge of the plaintiff, asserted that the policy had been forfeited by reason of the nonpayment of said tenth and last premium.

### Conclusions of Law.

[1] The plaintiff was entitled to a recovery upon the policy of life insurance sued upon, unless such right was defeated by a forfeiture occasioned by the nonpayment of the tenth and last premium, which matured on October 27, 1899. Whether such forfeiture did or did not result from the nonpayment of said premium depends upon the course of dealing between the parties, as disclosed by the record; and if the forfeiture asserted by the defendant be inconsistent with assurances of the defendant to the plaintiff, then such forfeiture, upon plain, equitable principles, cannot be successfully interposed by the defendant. The pertinent testimony disclosed by the record relative to the course of dealing in the matter of the collection and payment of the premiums satisfactorily establishes both a uniform and customary course of dealing, as well as an agreement upon the part of the defendant to send a collector to the plaintiff's place of business, and, failing in that, the defendant would, in event of the nonpayment of a premium, advise the plaintiff of that fact and afford it an opportunity of paying the same. The defendant was advised that the plaintiff kept no record of the maturity of the premiums upon the policy in suit and upon other policies held by it and issued by the defendant. In pursuance of such understanding and agreement, the defendant, by sending its collector, collected successively the first nine premiums upon the policy in suit. It failed to send its collector for the payment of the tenth and last premium, and it failed to notify the plaintiff of the nonpayment of that premium. It did not call plaintiff's attention to the return of the premium receipt unpaid, nor did it advise the plaintiff that it would enter or assert a forfeiture by reason of such nonpayment, and the plaintiff was ignorant of the claim

of the defendant that the policy had been forfeited until shortly prior to the institution of this suit. The record discloses, without dispute, that the plaintiff was abundantly solvent, had paid nine of the ten premiums upon the policy in suit, that it held the same as security for a large indebtedness of an insolvent ·debtor, and that it had no other security; and it therefore had every reason to prompt it to maintain said policy in force. The testimony also shows, without dispute, that the plaintiff held several other policies in the defendant company, and that it promptly paid every premium upon all of the policies upon the call of the defendant's collector therefor. The record discloses no instance of any dereliction upon the part of the plaintiff in paying, when called upon to pay. The testimony further shows that the plaintiff was assured that the premiums would be called for, and plaintiff had the right to rely upon, and did rely upon, such assurances; and it had the right to believe that the defendant would not attempt, in the absence of presenting a receipt to it for payment, to declare a forfeiture for nonpayment.

Viewing the evidence in the light of the related significance of the facts, there can be no dispute that the defendant, by its course of conduct and by its assurances, led the plaintiff to believe that as long as it continued to pay promptly, upon demand, no forfeiture would result from its failure to pay, if such failure were occasioned by the defendant's neglect to send its collector. The state of the evidence is such as to show unquestionably that the premium in question would have been paid, had the receipt therefor been' presented, as defendant had obligated itself by its conduct and agreement to do. The defendant's failure to send its collector or to notify the plaintiff that the premium in question had not been paid led the plaintiff to believe that, as the defendant discontinued sending its collector for the premiums on the policy in suit, said policy had been paid up. That plaintiff rested in such belief is manifest from the fact that it had the right in any event, and without further payment, to demand a paid-up policy in the sum of $4,500. It made no such demand, because, as shown by the testimony, it desired to maintain the policy in force for its full amount. If the forfeiture asserted by the defendant is to prevail, then the plaintiff must be made to lose the $4,500 paid-up policy, to which it was concededly entitled, even though it should have declined to pay the premium in question. The plaintiff understood that all that was required of it in the matter of the payment of premiums upon its several policies issued by the defendant was to make prompt payment thereof upon demand therefor at its office by the defendant's collector. The acts of the defendant, as disclosed by what it actually did

prior to October 27, 1899, practically contemporaneous therewith, and subsequently thereto, clearly disclose that it had the same understanding as did the plaintiff. The testimony shows that upon one occasion a receipt upon the other Thompson policy was returned to the defendant's general agents at San Antonio. Said agents did not thereupon return· the unpaid receipt to the company, to the end that a forfeiture might be entered, but they advised the plaintiff of the nonpayment, with the result that it appeared that such nonpayment was occasioned by the failure of the defendant's collector to call upon plaintiff for the premium, and thereupon plaintiff paid such premium, and defendant asserted no forfeiture. It, in effect, admitted that the nonpayment was occasioned by its own default. A similar occurrence was had with reference to the D. C. Brown policy, to which the relation of the parties was the same as to the policy involved in this action. The defendant sent no collector for the premium in question; the receipt therefor was returned, without presentation to the plaintiff, unpaid; and the defendant gave the plaintiff no notification of that fact, and plaintiff was ignorant of the fact. The defendant's agents at San· Antonio were its general agents, and the testimony of the superior officers of the company shows that they had full authority over the matter of the method of collecting premiums, and it undisputably follows that their acts in the premises are in law those of the company itself. To permit the defendant, under the circumstances disclosed by the record, to forfeit the policy and unawares to the plaintiff, notwithstanding its agreement and assurances which, as it knew, lulled the plaintiff into security, would be violative of fair dealing; it would take the plaintiff at a serious disadvantage and wholly unawares; it would be contradictory of the mutual understanding of the 'parties; and for such reasons such claim of forfeiture cannot prevail. Under the authorities it is clear that the defendant company should not be permitted to profit by the failure of its 'general agents to carry out their agreement with the plaintiff in respect to the method of collecting the premiums. McCorkle v. Insurance Ass'n, 71 Tex. 149, 8 S. W. 516; Mayer v. Mutual Life Ins. Co., 38 Iowa, 304, 309, 18 Am. Rep. 34; Rutherford v. Prudential Ins. Co., 34 Ind. App. 531, 73 N. E. 202, 205; Hartford Life Ins. Co. v. Hyde, 101 Tenn. 396, 48 S. W. 968, 969, 970; Union Central Life Ins. Co. v. Pottker, 33 Ohio St. 459, 31 Am. Rep. 555; Goedecke v. Metropolitan Life Ins. Co., 30 Mo. App. 601; Home Fire Ins. Co. v. Stancell, 94 Ark. 578, 127 S. W. 966, 967, 968; Kavanaugh v. Security Trust & Life Ins. Co., 117 Tenn. 33, 96 S. W. 499, 504, 7 L. R. A. (N. S.) 253, 10 Ann. Cas. 680; Elgutter v. Mutual Reserve Fund Life Ass'n, 52 La. Ann. 1733, 28 South. 289, 291; Insurance Co. v. Eggleston, 96 U. S. 572, 24

L. Ed. 841; Hartford Life Ins. Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671, 36 L. Ed. 496.

Under the circumstances disclosed by the record, it was not open to the defendant company to forfeit the policy unawares to the plaintiff. Williams v. Empire Mutual Annuity & Life Ins. Co., 8 Ga. App. 303, 68 S. E. 1082; Metropolitan Safety Fund Accident Ass'n v. Windover, 137 Ill. 417, 27 N. E. 538, 542; Queen Ins. Co. v. Forlines, 94 Ark. 227, 126 S. W. 719, 722; Goedecke v. Metropolitan Life Ins. Co., 30 Mo. App. 601; Home Fire Ins. Co. v. Stancell, 94 Ark. 578, 127 S. W. 966; McCorkle v. Insurance Ass'n, 71 Tex. 149, 8 S. W. 516.

The defendant should have caused the premium receipt in question to be presented to the plaintiff's office for payment. It failed to do so. Having failed to present said receipt for payment, by reason whereof said receipt was returned unpaid to the general agents at San Antonio, it devolved upon them to notify the plaintiff and afford it an opportunity of paying the same. Said general agents failed to do this. Upon the contrary, they, without notice to the plaintiff, forwarded said unpaid receipt to the home office, and thereupon the company, without notice either to the plaintiff or the assured, entered the forfeiture which is now asserted herein, and of which the plaintiff was ignorant until shortly prior to the filing of this suit. Such forfeiture was in opposition to the right of the plaintiff and to the mutual understanding of both parties, and the defendant is therefore estopped to assert it.

[2] It is insisted, however, that, notwithstanding such forfeiture was entered contrary to the understanding of the parties, yet the plaintiff should be denied a recovery because of its delay in discovering the nonpayment of the last premium. The facts show that no cause of action had arisen upon the policy; that same was filed away in the plaintiff's vault; and that plaintiff had no occasion to inspect or examine the same for any purpose whatsoever, and, being lulled into security, it did not suspect that the defendant would attempt to take any advantage of it, or would act in opposition to its previous conduct and assurance. The delay, however, was that of the defendant in failing to send its collector to the plaintiff for payment. Under the course of dealing between the parties, the initiative devolved upon the defendant, and not upon the plaintiff. No duty devolved upon the plaintiff, under the course of dealing between the parties as disclosed by the record, of hunting up any premium receipt for the purpose of paying it, but its duty in the premises consisted in making prompt payment upon presentation; and it discharged its duty in every instance. The initiative devolved upon the defendant, and it does not, therefore, lie in its mouth to say that there existed a delay, when that delay was occasioned by its own failure to discharge its agreement.

[3] The forfeiture claimed took place on October 27, 1899, or it never occurred at all. That it did not occur on that day is clear from the evidence disclosing the actual transactions between the parties and their mutual understanding of them. A forfeiture once waived is always waived, and can never thereafter be interposed. The defendant's suggestion that the plaintiff's cause of action is barred by limitation is without merit, because the assured died on April 17, 1911, and the plaintiff's second amended original petition, which, in consequence of the death of the assured, sought for the first time a recovery upon the policy, was filed August 24, 1911.

From what has been said, it follows that the first assignment of error of the defendant, complaining of the court's refusal to peremptorily instruct a verdict in its favor, should be overruled.

[4] Defendant's second assignment of error complains of the admission in evidence of premium receipts on the other Thompson policy and on the D. C. Brown policy. The relation of the parties to those policies was the same as that they bore to the policy in suit, and their dealings with reference thereto were but confirmatory of the general course of dealing and understanding which related alike to all of said policies, and said testimony was admissible. Likewise, the testimony of the acts of the defendant subsequent to October 27, 1899, but showing a continuous course of dealing, were admissible as throwing light upon the original and continued mutual understanding of the parties; and therefore the third, fourth, fifth, sixth, and seventh assignments of error are overruled. There is no assignment going solely to the admission of the premium receipts on the Crosthwait policy.

[5] The objection was in solido to the admission of premium receipts on the other Thompson policy and on the policies of Brown and Crosthwait. Even though, upon appropriate objection and assignment, it should be held that the premium receipts on the Crosthwait policy were inadmissible, yet such error would be harmless, because there is abundant competent evidence to establish the same understanding on the part of both parties as to the method of collecting premiums upon all of the policies issued by the defendant and held by the plaintiff. A careful consideration of the competent evidence disclosed by the record, and as viewed in the light of the pertinent authorities, convinces us of the correctness of plaintiff's recovery, and the judgment of the court below is therefore affirmed.