### FRIEND IN NEED BENEFIT ASS'N v. HARDIN.

#### No. 11857.

Court of Civil Appeals of Texas. Dallas.

Dec. 21, 1935.

Read, Lowrance & Bates, of Dallas, for appellant.

John G. Wilson, of Dallas, for appellee.

. LOONEY, Justice.

Stripped of all immaterial matters, this ·suit may be described as an action by Robert E.· Hardin, beneficiary, against the Friend In Need Benefit Association, an incorporated mutual insurance organization, to recover the amount (not exceeding $1,000) due on a certificate or policy issued by the association on the life of Mary Alice Hardin, the deceased wife of appellee.

The suit was defended on the ground that, having failed to pay the October, 1932, assessment within the time stipulated, that is, within fifteen days from the date of the notice of said assessment, the insured, Mary Alice Hardin, thereby became suspended and that all rights under the certificate were forfeited.

In answer to this defense, appellee alleged that the contract sued upon contained .no. provision requiring payment of the assessment within fifteen days from the date of the notice, as alleged; that the assessment in question was in fact paid to and received by the association on October 28th, before it· became overdue, hence no delinquency occurred, the deceased was never legally suspended, nor were any rights or privileges under the certificate forfeited. Appellee alleged further that, even if the due date of the assessment was as contended by the association, its course of dealing with the deceased and other certificate holders, in accepting payment of assessments after the expiration of fifteen days from the date of the notice of assessments, caused deceased and appellee, who represented his wife in the transaction involved, to believe, and they did believe, that payment of the assessment for the month of October, 1932, on the 28th day of the month, was in time; that by its said con- ·tract the association waived the ground of forfeiture, if any such was authorized by the contract, and was estopped to assert the defense urged.

The record discloses that both appellee and his deceased wife had held membership in the association for a number of years prior to October, 1932, and that the regular monthly assessments against them for October, 1932, were paid to and received by the association on the 28th of that month.

The jury found, in answer to issues submitted, that the course of dealing of the association with reference to the collection of assessments on the certificate issued to appellee's deceased wife was reasonably calculated to cause appellee, as representative of his wife, to believe that payment of the assessment against her for the month of October, 1932, would be accepted after October 16th, without insured having to make application for reinstatement; that appellee, as representative of his wife, in failing to pay the October, 1932, assessment before October 16th, relied upon his belief that the dues for that month would be received after the 16th, without having to make application for reinstatement of deceased's certificate; that appellee, as representative of his wife, would have made payment of the October, 1932, assessment prior to the 16th, if he had not relied upon his belief that the payment would be received later, without having to make application for the reinstatement of the certificate held by his wife.

These findings are amply supported by the evidence, hence are adopted as our conclusions on the issues indicated, from which we conclude that, even if the contract of insurance was as contended by appellant, its course of dealing with the deceased and other members of the association was calculated to lead, and in fact did lead, the deceased and appellee to believe that strict compliance with such alleged provision as to the time when dues could be paid without incurring the penalty of suspension and forfeiture would not be insisted upon, and that such course of dealing amounted to a waiver of any such provision of the contract, if it existed,

and estopped the association to urge forfeiture as a defense to the action. See McCorkle v. Texas Benev. Asso., 71 Tex. 149, 8 S.W. 516; Georgia Home Ins. Co. v. Moriarty (Tex.Civ.App.) 37 S.W. 628; Equitable Life Assurance Society v. Ellis, 105 Tex. 526, 147 S.W. 1152, 152 S.W. 625; Mutual Life Ins. Co. of New York v. Davis (Tex.Civ.App.) 154 S.W. 1184; Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S.W. 585; Dunken v. Aetna Life Ins. Co. (Tex. Civ.App.) 221 S.W. 691; Supreme Lodge K. P. v. Hooper (Tex.Civ.App.) 282 S. W. 867 (writ refused).

■ However, we think there exists a more conclusive answer to the defense urged by the association. The provision of the contract brought under review reads: "It is understood and agreed that the member shall pay all assessments levied by the officers of the association, within the time specified on assessment notice, which time shall be not less than fifteen days from the date notice is mailed from the Home Office, to the last known address of the member. Assessments shall be collected monthly or as needed if more than twelve such assessments in any one year is required to retire all claims. Should the member fail to pay any assessment within the specified time he shall thereby become suspended and shall forfeit all benefits herein provided. * * *"

It will be observed that the contract did not require the insured to pay assessments within or not later than fifteen days from the date of the notice; the requirement being, to make payment "not less than 15 days from the date" of such notice. This language is not ambiguous, nor was it shown to have been mistakenly employed, and, however absurd or anomalous, must be given its literal interpretation in answer to the defense of forfeiture urged by the association. Although the contract provided that payment should not be made less than fifteen days from the date of the notice, it failed to fix a definite date for such payment; however, in view of the provision that "assessments shall be collected monthly," we think payment could have been made at any time during the current month, as was done in the instant case, without incurring the penalty of suspension and forfeiture.

■ As before shown, the October, 1932, assessments against appellee and wife were paid October 28th, on receipt of which appellant, returning same, stated in the accompanying letter, that: "We are returning to you check for four dollars and forty cents ($4.40) which was sent us in payment of reinstatement of insurance for yourself and wife. We are sorry to have to advise you that, upon our investigation we find that your wife is not now eligible for insurance in the association; therefore, we cannot reinstate her policy. You may send us another check for $2.20 in payment for reinstatement of your policy and upon receipt of same we will mail you a receipt, showing your policy has been reinstated."

Several significant matters may be noticed. The association employed the word "reinstate" with reference to both certificates, the one held by appellee, as well as the one held by his deceased wife, insisting that both were suspended for failure to pay the October, 1932, assessment in time. With reference to deceased, the association said: "We find that your wife is not eligible for insurance in the association; therefore, we cannot reinstate her policy." The evidence shows that this attitude towards the policy held by deceased was taken because the association had learned of the sickness of Mrs. Hardin. But, even if she stood suspended, as claimed by the association, there is nothing in the contract requiring a showing of good health as a condition precedent to reinstatement; the provision being that, "Should the member become suspended, he may be reinstated by paying one assessment plus $1.00 provided the application for reinstatement is approved by the officers of the Association. However, should the member be suspended for more than 60 days, the association may refuse reinstatement privileges and require that the applicant make regular application for a certificate at his attained age." The record discloses that, by its course of dealing, the association also waived strict compliance with this formality, as in its letter to appellee, returning the remittance for the October, 1932, assessments against Mr. and Mrs. Hardin, addressing Mr. Hardin, it said: "You may send us another check for $2.20 in payment for reinstatement of your policy and upon receipt of same we will mail you a receipt, showing your policy has been reinstated." All that was required by the association to reinstate the policy held by Mr. Hardin was simply "another check for $2.20 * * * and upon receipt of same we will mail you a:

receipt showing your policy has been reinstated"; no showing as to good health or the payment of $1 being exacted. The record further discloses that the October and November assessments were not paid by Hardin until on November 18, 1932, when both were delinquent, if the contention of the association is correct. The record further discloses that deceased was ready and willing to pay the October, 1932, and future assessments, or at least appellee was ready and willing to make the payments, but was precluded from attempts to do so, because of the positive statement of the association in the letter to appellee, stating, "We find that your wife is not eligible for insurance in the association; therefore, we cannot reinstate her policy." Appellee offered to pay the assessment against his wife for October, 1932, also for the succeeding months prior to her death, and the amount of same was accordingly deducted from the amount due on the policy, and judgment was rendered for appellee for $984.60, from which this appeal was prosecuted.

We find no error in the judgment of the court below, and the same is affirmed.

Affirmed.