### STATE DIVISION, LONE STAR INS. UNION, v. BLASSENGAME.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 22, 1913.)

1. INSURANCE (§ 819*)—ACTION ON CERTIFICATE—SUFFICIENCY OF EVIDENCE — NOTICE OF ASSESSMENT.

Evidence, in an action upon a fraternal beneficiary certificate, where defendant set up a forfeiture for nonpayment of assessments, and where plaintiff alleged that no notices of the assessments were mailed, *held* to sustain a finding that notices of such assessments were not mailed at such time as to justify a forfeiture prior to the time those assessments were actually tendered, three days before the member's death.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. § 819.*]

2. EVIDENCE (§ 71*)—PRESUMPTION—RECEIPT OF MATTER MAILED.

Notices of assessments, if mailed, would be presumed to have been received.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 92; Dec. Dig. § 71.*]

3. INSURANCE (§ 818*)—MUTUAL BENEFIT ASSOCIATIONS—NOTICE OF ASSESSMENT—EVIDENCE.

In an action on a fraternal beneficiary certificate, defended on the ground of forfeiture by failure to pay certain assessments, and in which plaintiff claimed that no notices thereof were received, evidence that other members of the association had received notices mailed at the time plaintiff's notice was alleged to have been mailed, and had paid their assessments promptly, was inadmissible, as tending to multiply the issues by inquiring into collateral matters.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2003–2005; Dec. Dig. § 818.*]

4. INSURANCE (§ 826*) — FRATERNAL BENEFICIARY ASSOCIATION — ACTION — INSTRUCTIONS.

In an action on a benefit certificate, where there was no contention that the notices of assessments were or could have been mailed at any other time than that claimed by defendant, an instruction that the burden of proof was upon the defendant to show that notices were mailed at that time was not objectionable, on the ground that it was sufficient if the notices were mailed at such a time as to afford insured 15 days prior to her death in which to pay the assessments.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2010; Dec. Dig. § 826.*]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by H. C. Blassengame against the State Division, Lone Star Insurance Union.

Judgment for plaintiff, and defendant appeals. Affirmed.

Moore & Park, of Paris, and Walker & Baker, of Cleburne, for appellant. R. S. Phillips and H. P. Brown, both of Cleburne, for appellee.

SPEER, J. H. C. Blassengame instituted this suit against the State Division of the Lone Star Insurance Union of Paris, Tex., on a certificate of insurance upon the life of Mrs. Lizzie Blassengame, wife of the plaintiff, and on findings of a jury on special issues submitted to them recovered a judgment for $997.80. The defendant is a fraternal beneficiary insurance company, incorporated under the laws of this state operating on the mutual assessment plan, and the defense relied on was the failure of the insured to pay certain assessments known as assessments Nos. 47 and 48. The defendant company appeals.

Following are the material issues submitted to the jury, together with the answers given thereto, to wit:

"1. Were assessments Nos. 47 and 48 levied and called for as required by the by-laws of the defendant? Answer: No.

"2. Was the notice of assessment No. 47 mailed at Paris to Mrs. Lizzie Blassengame on January 1, 1912? Answer: No.

"3. Was the notice of assessment No. 48 mailed at Paris to Mrs. Lizzie Blassengame on February 3, 1912? Answer: No.

"4. Was notice of assessment No. 48 mailed at Paris, Tex., 15 days before the tender made to Allard at Cleburne, Tex.? Answer: No.

"5. Did M. P. Allard make an agreement with plaintiff that he would pay assessments as called for, and charge the same to plaintiff? Answer: Yes.

"6. Did M. P. Allard notify the plaintiff that he could not charge his account with assessment No. 47 before or after the 15th day of January, 1912? Answer: About January 20th.

"7. Did the plaintiff, or any one for him, offer to pay to the agent of the defendant at Cleburne assessments Nos. 47 and 48; if so, on what date? Answer: Yes, on or about March 2, 1912."

M. P. Allard was the agent of appellant at Cleburne, Tex., where appellee's wife's membership was, and it is admitted that assessments Nos. 47 and 48 were never paid. The questions submitted indicate the issues arising under the pleadings. The main question to be decided, and the one which in our judgment disposes of the appeal, is whether or not the evidence supports the verdict to the effect that no notices of assessments Nos. 47 and 48 were mailed to Mrs. Lizzie Blassengame at such a time as to justify the forfeiture of her membership prior to the time she actually tendered these payments, which

was three days prior to her death. Section 7 of the by-laws of appellant order, which constitute a part of the contract of insurance, provides that when the secretary of the order receives notice of the death of a member he "shall at once send out notice of such death to the members of the class or division of which the deceased was a member and call for the sum of $1.10 from each member of said class as a new advanced assessment to be paid," etc. While section 9 provides: "Any member failing to pay any part of the assessments and annual dues provided for in these by-laws within 15 days after mailing of notice thereof, shall thereby forfeit membership and shall be dropped from the class or division of which he or she is a member and from the union." Section 16 is: "Each member shall notify the home office of any change of address. If a notice of assessment is left at or mailed to the last given or known address of the member, it shall be sufficient notice to the member."

[1, 2] Worth Duncan, the secretary and manager of appellant, testified that on January 1, 1912, assessment No. 47 was duly levied, and on the same day cards calling for the payment of this assessment were mailed to all the members, including deceased, Mrs. Blassengame; that on February 3, 1912, assessment No. 48 was duly levied, and printed notices mailed to each member, including the deceased, on that date. He identified in evidence cards used for these assessments calling on members to pay within 15 days the amount of the assessments, and testified that these were similar to the cards mailed to Mrs. Blassengame. The witness did not personally prepare these notices, or address or mail them to the deceased, but they, along with all others to members of her class, were addressed by means of an addressograph, a large metal machine weighing about 1,000 pounds, holding metal plates upon which were the names of the individual members. He testified the name of Mrs. Blassengame was on the plates in the machine, and told in detail how the work of addressing the cards was done. The books of the company showed that the addressed cards were checked off by the lists of members, and that the cards were then in lots of 500 returned to the original boxes in which they were purchased from the post office, and then delivered to the clerks or postal authorities in said boxes to be deposited in the mail; that is, when the mail carrier came around for the mail these cards were delivered to him for the purpose of being transmitted through the mails. The witness did not undertake to swear that the particular cards were mailed, further than to detail the above circumstances with reference to the method of doing the work. Appellee testified that he did not receive the original notification card of assessment No. 47 at all, but that he received a second notice

of this assessment together with the original notice of assessment No. 48, two or three days prior to the death of his wife. He did not produce the notices received, but testified that they had been lost. This testimony, we think, not only raised the issue as to the mailing of such notices within the by-laws, but also supports the verdict of the jury, finding that such notices were in fact not mailed at the times indicated. The testimony relied on by appellant is wholly circumstantial, while the appellee testifies positively he did not receive the notices. While appellee is an interested witness, appellant's secretary-manager, who it seems had charge of the supervision of the mailing of these notices, was likewise interested. Under the by-laws appellant was entitled to forfeit the membership of the deceased if her payments were not made within 15 days after mailing out notices of assessments, whether such notices were actually transmitted through the mails and received by her or not, but appellee's denial that the notices were received 15 days before the attempted forfeiture undoubtedly would authorize the inference that they were never mailed, for the presumption is, if they had been mailed, they would have been received.

[3] At this point we may as well dispose of the assignments complaining that the court erred in refusing to admit testimony that other members of appellant company, at Cleburne, Tex., had promptly received notices of assessments Nos. 47 and 48, bearing the postmark at Paris, Tex., as of the date testified to by its secretary, Duncan, and of the local representative, Allard, to the effect that all members at Cleburne, other than the deceased, immediately after those dates on which the home secretary had mailed out the notices, and within 15 days therefrom, more than 194 members, paid these assessments, and that he immediately entered on the stubs of his receipt book the time of such payments and the names of the persons making the same. This testimony, it is insisted, was admissible as so many circumstances corroborating the testimony of Worth Duncan that the notices to Mrs. Blassengame had been mailed. We think, however, the court committed no error in excluding it. While its tendency undoubtedly would be in the direction contended for, yet under well-established rules of evidence forbidding the multiplication of issues by inquiring into collateral matters, the court properly excluded the same. We do not think the fact that other local members received timely notices of their assessments is any legal evidence that appellant company also mailed notices to the deceased.

[4] The court instructed the jury that the burden of proof was upon the defendant to establish the fact that the notices were mailed at Paris, Tex., at the time claimed by the defendant. This instruction is criticised

because it is contended that it was sufficient if the notices were mailed, not necessarily at the time claimed, but yet at such a time previous to her death as to afford her 15 days in which to pay the assessments. This distinction amounts to nothing, in view of the testimony, since there is no contention that the notices were, or could have been, mailed at any other time than that stated by the home secretary, which corresponded to the dates claimed by the defendant.

The complaint as to the submission of issue No. 5 becomes unimportant, since the determination of the other matters already discussed necessarily result in the affirmance of the judgment.

There is no error in the judgment and it is affirmed.