**WICHITA HOME INS. CO. v. MONTGOM-
ERY. (No. 2891.)***

Court of Civil Appeals of Texas. Amarillo.
Oct. 26, 1927.

Rehearing Denied Dec. 14, 1927. Petition for
Writ of Error Refused April 11, 1928.

**1. Insurance ☞825(2)—Whether notice of assessment was mailed to assured held for jury.**

Whether any notice of assessment, levied by directors of mutual insurance association on death of member in assured's class, was mailed to assured as required by life insurance policy, held for jury on conflicting evidence in action on policy.

**2. Insurance ☞817(2)—Insurer asserting forfeiture of policy for nonpayment of assessment must show due levy and notice thereof.**

It was incumbent on mutual insurance association, asserting forfeiture of life policy for nonpayment of assessment, to show that such assessment was duly levied by directors and notice thereof given assured as prescribed by policy.

**3. Insurance ☞817(2), 819(2)—Notice of assessment may be proved by custom of insurer's mailing official, but must be shown to have been properly stamped and received by postal authorities.**

Required notice of assessment to assured may be proved by evidence of custom of official mailing notices, though he had no independent recollection of particular notice, but inference so arising may be refuted, and it must be shown that notice was properly stamped and reached postal authorities.

**4. Insurance ☞825(2)—Insurer's custom to notify policy holders before forfeiting policy for nonpayment of dues and assured's knowledge thereof held for jury.**

In action against mutual insurance association on life policy, evidence held sufficient to take to jury issue of defendant's custom to notify policy holders 15 days before forfeiture of policy for nonpayment of dues and assured's knowledge of such custom.

**5. Insurance ☞755(4)—Insurer held estopped by custom and agent's statements as to notice of forfeiture and period covered by dues paid to defeat recovery on life policy for nonpayment of dues.**

Where plaintiff, in action on·life insurance policy, properly pleaded estoppel against defendant by custom and statements of its representatives when application was made and policy issued, and jury found on testimony not attacked as insufficient that it was defendant's custom to notify policy holders 15 days before forfeiture of policy for nonpayment of dues, and that defendant's agents represented to assured that payment made when policy was issued covered all dues until certain date after assured's death, defendant was estopped to defeat recovery for failure to pay semiannual dues six months prior to such date.

**6. Insurance ☞755(4)—Insurer or authorized agent, by customary dealings inducing belief that punctual payment of premiums will not be insisted on, waives forfeiture.**

Insurance company or its authorized agent, inducing honest, reasonably founded belief in policy holder's mind that strict compliance with stipulation for punctual payment of premiums will not be insisted on, by habits of business, declarations, customs, or other course of conduct, will be deemed to have waived right to claim, or estopped itself to enforce, forfeiture for nonpayment of premiums as stipulated, though policy also provides that agents cannot waive forfeiture.

**7. Estoppel ☞52—Principle of equitable estoppel gives effect and meaning to parties, actions which common sense and justice dictate.**

Principle of estoppel in equity considers and weighs conduct of men in their dealings with

each other and gives that effect and meaning to their actions which common sense and justice dictate.

**8. Insurance** �köö755(1)—**Fraternal insurance association is subject to principles of equitable estoppel.**

A fraternal insurance association is as much subject to operation of principles of equitable estoppel as any other association or individual.

**9. Insurance** �köö755(2)—**Insurer held bound by soliciting agents' statements as to custom of notifying assured before forfeiture for non-payment of dues and time covered by dues paid.**

Insurance company, whose manager testified that company had agency force, working exclusively for it and authorized to take policies and applications, and that he knew agents who secured assured's application and issued policy to him, as such agents testified without objection, *held* bound by their statements and declarations to assured as to insurer's custom of notifying policy holders 15 days before forfeiting policy for nonpayment of dues and time covered by dues paid when policy was issued.

**10. New trial** ⊦köö124(1), 150(4)—**Affidavits of insurance company's agents and president held not to warrant new trial of action on policy, where motion was not verified, nor any affidavit as to why testimony was not discovered before trial presented.**

Affidavit of agent, participating in securing application for and issuing life insurance policy, and of insurer's president, that they would have given testimony contradicting that of plaintiff and insured's brother *held* not to warrant new trial for newly discovered evidence, where motion therefor was not verified, nor any affidavit showing why such testimony was not discovered before trial presented.

**11. Appeal and error** ⊦köö1050(1)—**Insurance** ⊦köö818(3)—**Admission of testimony of assured's brother that he would have paid assessments had he known of them held not reversible error, in absence of showing that assured would not have paid them if notified.**

In action on life insurance policy, admission of testimony of assured's brother, who lived and had joint bank account and kind of partnership with assured, that he never received any notices of assessments without responding thereto and would have paid any assessment due on policy had he known of them, *held* not reversible error, in absence of showing that assured intended to permit policy to lapse or was unable or unwilling to pay assessments had he received notice thereof.

Appeal from District Court, Wichita County; W. W. Cook, Judge.

Action by Laura Belle Montgomery against the Wichita Home Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Davenport & Crain, of Wichita Falls, for appellant.

Weeks, Morrow, Francis & Hankerson and Neal Powers, all of Wichita Falls, for appellee.

JACKSON, J. This suit was instituted by the appellee Laura Belle Montgomery, a widow, in the Seventy-Eighth district court of Wichita county, Tex., against the appellant, the Wichita Home Insurance Company, a local mutual aid association.

Appellee alleges that on the 10th day of March, 1925, for a valuable consideration, the appellant issued to John Lewis Montgomery a policy of insurance upon his life, the provisions of which were substantially as follows: That the appellant would pay to the order of Laura Belle Montgomery, the mother of assured and beneficiary in said policy, the sum of $1 for each member in good standing of said mutual aid association, at the time of the death of the assured, if he should be in good standing at such time, but said amount was not to exceed $1,000; that the assured, John Lewis Montgomery, should pay, within 15 days of the date of the call therefor, the assessments of $1.10 levied by the directors of the appellant, upon the death of any member in "class D," to which class the assured was assigned, and also pay $3 per year to appellant as annual dues; that appellant should mail a written or printed notice properly stamped, addressed, and mailed, to the assured at his last address, of each assessment, as made, and that said certificate or policy of insurance should be subject to all of the laws of the company or orders of the board of directors in force at the time of the issuance of the certificate of insurance or that might thereafter be enacted.

Appellee further alleges that John Lewis Montgomery died on or about the 6th day of July, 1925, and at the time of his death he had in all things complied with the provisions and terms of the policy of insurance; that there were more than 1,000 members in the class to which the assured belonged at the time of his death, and appellant was bound and obligated to pay the appellee the sum of $1,000, for which demand had been made, more than 30 days prior to the filing of the suit, but which sum, or any part thereof, the appellant had failed and refused to pay.

The appellant answered by general demurrer, special exceptions, and general denial; admitted the execution and delivery of the policy to John Lewis Montgomery, in which it promised to pay to the order of Laura Belle Montgomery, the appellee, $1 for each member in good standing at the time of the death of the assured, said amount not to exceed $1,000, on the condition that the assured was in good standing at the time of his death; that the assured was not in good standing at the time of his death, as he had failed to pay assessment No. 13 within the 15 days allowed for the payment thereof and had failed to pay the assessment of $1.50 for semiannual dues, as provided by the Constitution and by-laws of the association, as a membership

⊦köö For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

fee; that, by virtue of his failure to pay assessment No. 13, and his membership dues, he was not in good standing at the time of his death, and the company was not liable on said certificate or policy of insurance.

By supplemental petition, in reply to appellant's answer, the appellee pleaded general demurrer and general denial and alleged that assessment No. 13 was not a legal assessment; that no notice of such assessment had been given to the assured or to the appellee, and that no attempt was made by the appellant to notify either appellee or the assured that such assessment had been made; that, prior to and at the time of the issuance of the policy, both appellee and the assured were informed by the agents of appellant that the $3 annual dues charged as a membership fee was payable on December 1st of each year; that appellee and assured were also informed that the initial fee which was paid at the time of the issuance of the policy paid all membership fees and annual dues accrued or to accrue up to December 1, 1925; that they were also informed that notice of all payments for annual dues and for assessments arising on the death of a member would be given by mail 15 days prior to the last date on which such payments could be made; that appellee and assured were both familiar with the custom of appellant to send out such notices, and that they relied upon such custom and upon the promises made to them that such notices would be sent out by appellant; that, if such statements were not true, such representations were made by the agents of appellant with the fraudulent intent of defeating the rights of the assured and appellee under the policy; that such representations were relied upon, and the appellant has thereby estopped itself from urging as a defense that the annual dues or assessment No. 13 had not been paid.

In response to special issues submitted by the court, the jury found, in effect, that the agents of appellant represented to the assured that the down payment of $10 would cover all dues until December 1, 1925; that the appellant did not, 15 days prior to declaring the policy of assured forfeited, deposit in the United States post office notice properly addressed to the assured, notifying him that assessment No. 13 was due and payable; that, if such notice had been deposited in the post office, properly addressed to assured, such assessment would have been paid prior to the date the policy was declared forfeited.

In response to special issues requested by the appellee and submitted by the court, the jury found in effect that it was the custom of the appellant to notify its policy holders 15 days prior to the forfeiture of a policy of the failure to pay annual dues, and that such dues were due and payable; that the assured knew of this custom; that no such notice was deposited by appellant in the mail, addressed to assured at his last-known address,

notifying him that the semiannual dues of $1.50 was due and payable on or before June 1, 1925; that, if such notice had been so mailed, the payment of the semiannual dues of $1.50 would have been made.

On these findings of the jury, judgment was entered in favor of appellee against appellant for the sum of $1,000, with interest thereon at the rate of 6 per cent. per annum from January 1, 1926, and for costs, from which judgment this appeal is prosecuted.

[1] The appellant, in its first and third propositions, urges as error the action of the trial court in refusing its requested peremptory instruction, because the policy sued on provided that in giving notice of an assessment it should not be necessary for the company to do more than mail a written or printed notice, properly stamped and addressed, to the assured at his last-known address, and that failure to pay such assessment within 15 days from the date of the call therefor should forfeit all claims of assured under the policy, and that the testimony disclosed that notice of assessment No. 13 was properly stamped, addressed, and mailed to the assured at his last-known address, and that such assessment was never paid.

The provisions of the policy necessary to a disposition of this appeal are:

"That he or she agrees to pay assessments levied by the directors of this company of $1.10 upon the death of any member within fifteen days of date of call for same, and $3.00 per year for expenses, as needed. $1.50 is to be paid by June 1st and $1.50 by December 1st of each year; and agrees further that failure to pay any assessment so levied within fifteen days from date of call, or to pay said yearly dues on or before June 1st and December 1st of each year shall forfeit all claims as a member of the company."

"That it shall be the duty of each member to keep the secretary of the Wichita Home Insurance Company informed of the post office address of such member, and in giving notice of any assessment it shall not be necessary for the Wichita Home Insurance Company to do more than mail a written or printed notice properly stamped and addressed to such member, at his or her last address."

The record discloses that the appellee, the deceased, and his brother, Alvin Edwin Montgomery, lived on a farm, and that their address was Burkburnett, Tex., and the number of the post office box in which they had their mail delivered was 568, and that each of them received their mail in said box at the post office in Burkburnett, and that this was the address and the number of the post office box given to the appellant by deceased, which had not been changed; that the appellee, the deceased, and his brother lived together and farmed the same place, had a joint bank account, in which they placed their earnings, and upon which they all drew checks for the payment of their obligations; that the appellee, the deceased, and his brother each made

application to appellant for insurance at the same time and each was issued a policy. The testimony tends to show that neither of the three parties ever received the notice of assessment No. 13.

Mr. Edgar P. Haney, the manager of the appellant company, during the times involved in this controversy, testified in detail that the company installed an addressograph about February, 1925, and that on assessment No. 13 he checked the notices with the young lady operating the machine, and a notice was addressed to the assured, "Burkburnett, Tex., Box 568;" that the cards on which notices are sent out are United States post cards and are mailed under the supervision of the cashier in the office; and that he did not handle the mailing of cards personally. The cashier of the company did not testify, nor did any other person testify, that the notice of assessment No. 13 was deposited in the post office to be transmitted to the assured. This testimony, in our opinion, was sufficient to present an issue of fact for the determination of the jury, as to whether or not any notice had been mailed to the assured.

[2, 3] "Having asserted a forfeiture, it was incumbent upon the association to show it. To do so, it must have shown that assessment No. 23 had been duly levied by its board of directors as prescribed both in the certificate and in the by-laws of said association; that notice thereof had been given, as prescribed, to such member; and that such member had failed to pay the assessment. Of necessity, notice of an assessment made upon the membership by the board of directors must be given the members before they could be held liable thereon, and the method prescribed for giving such notice must be pursued. 32 C. J. 1218, 1223; Mutual Reserve Fund Life Ass'n v. Hamlin, 139 U. S. 297, 11 S. Ct. 614, 35 L. Ed. 167. And as stated in 14 R. C. L. 985: 'Where notice is required in order to establish a forfeiture for nonpayment of premiums, the burden is on the insurer to show that required notice was given. Such notice may be proved by evidence of the custom of the official mailing notice, even if he had no independent recollection of the particular notice though the inference so arising may be refuted; but it must be shown that the notice, if mailed, was properly stamped, and that it found its way into the custody of the postal authorities, and evidence of its nonreceipt may be received for the purpose of showing that it was not mailed.' " Winters Mut. Aid Ass'n v. Corum (Tex. Civ. App.) 297 S. W. 240.

[4] Appellant presents as error the action of the trial court in submitting to the jury the issue as to the custom of appellant to notify its policyholders 15 days prior to the forfeiture of the policy on their failure to pay their annual dues, because the suit was based on the written policy and it could not be altered or modified by the custom of the company, and because the testimony failed to

show any such custom, or that the assured knew of such custom.

Paul E. Parkins, one of the agents of the company to receive applications for and write insurance, and who was present at the time the application of the assured was made to appellant, testified, in effect, that at the time the Montgomerys made application for insurance he was the authorized representative of the association and they were told that they would be notified when any further payments should be or were to be made; that they would be notified 15 days prior to the expiration of the date for the payment of any further sums of money; that, as a matter of fact, that was the custom of the company; that, notwithstanding the policy might have provided for semiannual dues to be paid at a certain time, the company had a custom at that time of notifying the policyholders 15 days before the date of the dues by sending them a card, and when a death in the membership occurred, they gave 15 days' notice to the policyholders of the assessment for such death. The testimony tends to show that appellee, the deceased, and his brother knew of this custom and relied upon it, and the assurance that they would be notified of any sum due before their policies were forfeited.

In passing upon a stipulation in a policy, which provided that failure to make payment of the monthly dues without notice, on or before the 20th of the month, would ipso facto forfeit the policy, Judge Looney, in the case of Supreme Lodge K. P. v. Hooper, (Tex. Civ. App.) 282 S. W. 867, in which a writ of error was refused, says:

"This provision was inserted in the contract by appellant for its own benefit, and, of course, it was at liberty to waive it, and, in our opinion, did waive it, by this general custom or method of business. The law applicable to these facts is announced in 19 R. C. L. § 74, pp. 1274, 1275, as follows:

" 'Where a mutual benefit association has, in repeated instances, received from a member the payment of overdue assessments, so as to establish a custom of dealing between the parties, and lead the member to believe that a strict observance of a requirement as to the time of payment is not required, it is held that the certificate of insurance is not forfeited by failure to pay an assessment at the time when the by-laws of the society or a stipulation in the certificate requires it to be paid, provided it is paid within the customary period of extension of the time of payment, for the association is estopped by its course of conduct from claiming a forfeiture according to the strict letter of its contract. * * * And it must be shown that the delinquent member had notice of the practice and relied thereon.' "

[5] The appellee having properly pleaded estoppel against the appellant by custom and statements made by its representatives at the time application was made for the insurance and the policy issued, and the jury having found that it was the custom of the appellant

to notify its policy holders, on the failure to pay annual dues, 15 days prior to the forfeiture of a policy, and that the agents of appellant represented to the assured that the $10 payment made at the time of the issuance of the policy covered all dues until December 1, 1925, neither of which findings is attacked for insufficient testimony, appellant is estopped from defeating appellee's recovery because of his failure to pay the semiannual dues on June 1, 1925.

[6] "If an insurance company or its authorized agent, by its habit of business, or by its acts or declarations, or by a custom to receive overdue premiums without objection, or by a custom not to exact prompt payment of the same, or, in brief, by any course of conduct, has induced an honest belief in the mind of the policy holder, which is reasonably founded, that strict compliance with a stipulation for punctual payment of premiums will not be insisted upon, but that the payment may be delayed without a forfeiture resulting therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy expressly provides for forfeiture for nonpayment of premiums as stipulated, and even though it is also conditioned that agents cannot waive forfeitures, and even though the policy provides that receiving overdue premiums is merely an act of courtesy." 3 Joyce on Insurance, § 1356.

[7, 8] "The principle of estoppel in equity stands upon the very foundations of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate. A fraternal insurance association, such as appellant, is as much subject to the operation of its principles as any other association of persons or as an individual." Sovereign Camp, Woodmen of the World, v. Putnam (Tex. Civ. App.) 206 S. W. 970; McCorkle et al. v. Texas Benevolent Association, 71 Tex. 149, 8 S. W. 516; Independent Order of Puritans v. Brown (Tex. Civ. App.) 229 S. W. 939.

[9] Appellant assails as error the action of the trial court in refusing to submit, at appellant's request, the issue as to whether the agents who took the application for insurance had the authority to vary the written terms of the policy by parol statements.

The manager, Mr. Edgar P. Haney, testified that the company had an agency force that worked exclusively for the company and who was authorized to take policies and the applications, and that those agents were trained and gave their exclusive time to representing the company; that he knew the agents Mr. and Mrs. Parkins, whom the evidence shows secured the application of the deceased and the issuance of a policy to him by the appellant.

These agents testified, without objection, that they were employed as agents of the appellant to receive applications and write insurance, and that they secured the application of deceased and the issuance of his certificate of insurance to him by the company.

Under these facts, we think the company was bound by the statements and declarations made by its agents to the deceased. Joyce on Insurance, supra.

[10] Appellant urges as error the action of the trial court in refusing to grant it a new trial because of newly discovered evidence. Attached to the motion for a new trial is the affidavit of J. B. Lowry, one of appellant's agents, who participated in securing the application of deceased and having policy issued to him, as well as the affidavit of J. W. Boren, the president of the company, which discloses that they would have given testimony contradicting, on certain material issues, the testimony of appellee and her son, Alvin. E. Montgomery. These affidavits do not disclose why the testimony of these witnesses was not offered on the trial or why appellant had failed to discover what their testimony would be. The motion for a new trial is not verified, and no affidavit showing why this testimony was not discovered prior to the trial, and this assignment is overruled. Ruhrup v. Southwest Cigar Co. (Tex. Civ. App.) 293 S. W. 284, and authorities cited.

[11] Appellant challenges as error the action of the trial court in permitting the witness Alvin E. Montgomery, over its objection that such testimony was irrelevant, immaterial, and prejudicial, to testify that he had never received any assessment of dues that he had not responded to, and that, if he had known there were any assessments due on the policy held by his deceased brother, or his mother, he would have paid them. The record discloses that this witness, his mother, and deceased brother lived together, farmed together, had the same post office box and a joint bank account, upon which each checked and out of which their indebtedness was paid; that they had a kind of a partnership and whatever they had they all had together; that, if he had known there were any assessments due on his policy or his mother's policy or the policy of his deceased brother, he would have paid them. The certificate of insurance had been issued and accepted and there is nothing in the record to show that deceased intended to permit his policy to lapse, or that he was unable to pay the dues and assessments thereon, or that he would not have paid them had he received notice thereof, and, under these conditions, it was immaterial to the appellant as to who paid such obligations, and the admission of this testimony, in our opinion, is not reversible error.

The record shows, by agreement of the parties, that there were more than 1,000 members

in good standing at the date of the death of John Lewis Montgomery.

The judgment is affirmed.