The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

**BORDER STATE LIFE INS. CO. v. NOBLE.**

No. 3913.

Court of Civil Appeals of Texas. El Paso.
Feb. 29, 1940.

Rehearing Denied March 21, 1940.

**120**

Cofer & Cofer, of Austin, and Petsch & Usener, of Fredericksburg, for appellant.

Alex Jung, of Fredericksburg, for appellee.

PRICE, Chief Justice.

This action originated in the District Court of Gillespie County. Appellee, Mrs. Christine Noble, sued appellant, Border State Life Insurance Company, on a policy of life insurance issued on the life of her husband, in which she was named as beneficiary. The parties, for convenience, will be designated as they were in the trial court.

Plaintiff alleged the issuance of the policy, payment of the premiums, the death of her husband, Albert W. Noble, the furnishing proof of loss in accordance with the terms of the policy; judgment was sought in the sum of $1,000. The petition is somewhat lengthy and other matters were set up which we will not set out. Suffice it to say that all matters herein

discussed came within the scope of the pleadings of the parties, and there is no question as to the sufficiency of the pleadings of either party.

Defendant pleaded in bar a general denial, specially that it was a corporation under Subdivision 46 of Article 642, R.S. 1895; that it was exempt from the insurance laws of the State by provisions of Art. 3096 and Article 3096w, Revised Statutes of 1895. The execution and delivery of the policy were admitted. It was averred that the policy had lapsed for failure to pay a $2 assessment premium due on the 5th day of August, 1937; prior to August 5th the mailing of a notice that same was due, at least fifteen days before that date; the reinstatement of the policy subject to the condition that the assured was in good health; a provision in the policy that if assured died from any of the certain enumerated causes, among which were heart disease and kidney trouble, within one year from the date of the policy or within one year from a reinstatement of the policy, that only onefourth of the face thereof should be paid; further, that the assured was not in good health on the date of the reinstatement and died within less than one year from heart disease or kidney trouble, or both. The provision as to good health was pleaded as a complete bar; the provisions as to death from kidney or heart disease as a defense to all but $250 of the alleged cause of action of plaintiff. The case was submitted by the court upon special issues to a jury. On the findings of the jury judgment was rendered against the defendant in the sum of $1,000. Defendant duly perfected an appeal and the case is here for review.

It seems that the parties concede that the defendant is a mutual insurance corporation. Alfred Noble made application for this policy on the 3rd day of June, 1935, and the policy is dated June 6, 1935. It provides for an assessment of $2.00 per month, payable in advance, and for increased assessment in certain contingencies. All these assessments from the date of the issuance of the policy to the death of the assured, which was on the 20th day of April, 1938, have been paid. It seems to have been the custom of the defendant to make these assessments come due on the 5th day of each month.

The controversy in this case has arisen over the $2.00 assessment alleged to have

been due on August 5, 1937. A correct disposition of this controversy largely, if not entirely, controls in this case.

Defendant alleges that it mailed notice of this assessment to the assured on July 20, 1937, and that payment was not made of such assessment until after August 5, 1937, and by failure to make this payment by that time the policy lapsed; that the assured on August 9, 1937, made application for reinstatement accompanying same with a remittance; that the payment was accepted and assured was reinstated on this application. On the other hand, the plaintiff contends that her husband did not receive the notice until the 9th day of August, 1937, and promptly made remittance thereafter.

Included in the remittance of Noble was a remittance on a policy on the life of plaintiff's wife in all respects similar to the one in suit. This remittance on plaintiff's policy (the policy on her life) was accepted without requirement of an application for reinstatement.

The contract of insurance here consists of the policy in question and the Constitution and By-Laws of the defendant. Even though it somewhat lengthens this opinion, it is deemed necessary to set out in full some of the provisions of each deemed vital here.

The policy of insurance provided:

"4. The holder of this policy is required to notify the company of any change in his or her address and there shall be no further obligation upon the company than to mail a written notice properly stamped and addressed to his or her last known address as shown by the records in the office of the company. The holder of this policy shall have the right to change the beneficiary herein named by filing notice of such intention at the Home Office, accompanied by this policy and fifty cents."

"8. The failure of the insured to pay any assessment levied by the company within fifteen days from date of notice shall, without further action on the part of the company, lapse this policy, and all future assessments received by the company are accepted upon the representation of the member being in good health and in lieu of a health certificate at the time of the company's acceptance of same."

"10. If the insured shall within one year from the date of this policy, or reinstatement after lapse thereof, die of any form of the following diseases: heart disease, kidney trouble, tuberculosis, cancer, high blood pressure or a complication thereof, then the company shall be liable for the payment of only one-fourth of the amount provided for herein, and one-half of the principal sum should death occur during the second certificate year from any of the above causes."

The Constitution provided:

"Section 8. Suspension—Reinstatement and Expulsion: Under no condition shall a member be automatically suspended for failure to pay dues or assessments until a notice is sent out to such member and to his last known address, stating therein by what date or time such a member will be suspended if payment of assessment or dues are not made. If, after such period of time, a member fails to make said payment, he becomes suspended and after such time cannot enjoy any of the privileges and rights stated in the policy.

"A member may reinstate on the following conditions, to-wit: such member shall be required to sign a reinstatement blank giving evidence of insurability at the time of reinstatement, and pay up all the assessments missed by said member to be placed in the mortuary fund less the portion payable to the Secretary and Treasurer as provided in Section #3.

"A member shall also pay a reinstatement fee of $1.00."

"Section 11. Assessments: All assessments shall be levied as ordered by the Board of Directors and such orders shall be entered upon the minutes in a book kept for that purpose of the Board of Directors."

In the construction of the insurance contract and determining the rights of the parties thereunder all of the above quoted provisions of the policy and constitution must be considered.

Under our construction of this policy, before defendant was entitled to lapse same for the non-payment of an assessment, notice of the due date thereof must be mailed to the assured at least fifteen days prior to the due date of the assessment. Defendant's testimony tended to show that the notice of the assessment of August 5, 1937, was mailed, in accordance with the policy, on the 19th day of July, 1937, same being dated the 20th day of July, 1937. Plaintiff testified that her husband did not receive such notice until the 9th day of August, 1937. The inference

of fact sought to be drawn by plaintiff was that said notice was not mailed at least fifteen days before the 5th day of August, 1937.

The jury found that the notice was mailed, properly addressed and stamped, but it was not so mailed fifteen days prior to August 5, 1937; that the policy was not lapsed after August 5th for non-payment; that Noble made application for reinstatement and same was accepted by defendant; that Noble was in good health on August 9, 1937, the date of the application; that Noble died of a form of heart disease; that such form of heart disease was not the proximate cause of his death—that it was the contributing cause; that he died from a form of kidney trouble; that they did not find same the proximate cause of his death; that kidney trouble was a contributing cause of his death.

Plaintiff filed motion for judgment on the verdict. Defendant likewise filed such motion, further seeking to have the finding that the notice was not mailed prior to the fifteen days disregarded, also the finding that Noble was in good health on August 9th, also the finding that the policy was not lapsed. These findings being disregarded, defendant sought to have the court enter judgment in favor of the defendant, or, in any event, the judgment should not be rendered for any amount in excess of $250. The motion further asked that if the findings be not disregarded, that then the court should set the verdict aside, as conflicting and declare a mistrial.

Notice was waived as to the respective motions by both plaintiff and defendant and the court sustained the motion of plaintiff and overruled that of defendant.

First, it is asserted that the evidence is insufficient to support the finding of the jury that appellant failed to give notice of the assessment of August 5th fifteen days prior to said assessment coming due; second, that having sought and obtained a reinstatement of the policy, the rights of the parties are to be determined on the basis of the reinstatement.

The question of reinstatement is important from this standpoint; that, as will be observed from the provisions of the policy above quoted, if there was a reinstatement, the amount of the coverage of the policy was decreased if the assured died within one year from certain enumerated diseases, among which were kidney trouble and heart disease.

Appellant's secretary and treasurer did testify to the addressing, stamping and mailing of the notice on July 19, 1937. If this testimony was believed by the jury it formed a basis for the reasonable belief that it had been duly delivered. In any event, appellant had discharged its full duty under the policy.

On the other hand, mail properly addressed and stamped and deposited in the United States Post Office is almost invariably delivered in a reasonable time. Plaintiff testified that a notice was not delivered to her husband until August 9th; she had every opportunity to know as to the facts to which she testified. San Antonio and Fredericksburg are less than one hundred miles apart. In ordinary course twenty-four hours would seem to be ample time for the mail to have been delivered. If delivery may be presumed from mailing, the failure to mail may be inferred from non-delivery. This proposition is valid where the mailing, stamping and addressing is an issuable fact. Texas Law of Evidence, McCormick & Ray, page 126, sect. 70; page 883, sect. 687.

As supporting the proposition the failure to mail may be inferred from failure to receive, the cases next cited are almost parallel as to their facts to the case at bar. Cisco Mutual Life Ins. Ass'n v. Ferguson, Tex.Civ.App., 8 S.W.2d 546; Mutual Life Ins. Ass'n v. Lillard, Tex.Civ.App., 5 S.W. 2d 586; Mutual Life & Loan Ass'n v. Wylie, Tex.Civ.App., 79 S.W.2d 919; Texas Mutual Life Ins. Ass'n v. Burns, Tex. Civ.App., 92 S.W.2d 469.

We hold that it was an issue of fact as to whether the notice of the assessment purportedly due August 5th was mailed at least fifteen days prior to that date.

We come now to the contention of appellant in substance that, having applied for and obtained a reinstatement, plaintiff must abide the legal consequences thereof. These legal consequences were that, as has been stated, the coverage of the policy was decreased from $1,000 to $250 in case of death from the diseases specified in the policy. Of course, if the assured was not in good health at the time of the reinstatement the coverage of the policy in any amount would be terminated. In regard to this last contingency the jury found that he was in good health on the 9th day of August, and the finding being upon conflicting evidence we think this question passes out of the case.

This policy was uncontestable after two years, and the two years had elapsed on August 9, 1937. If lapsation there was and reinstatement, as contended by defendant, the assured had lost part of the coverage of the policy and the benefit of the provision that same is incontestable. In the case at bar, if the policy did lapse, the payment of the premium and the promise of future premiums were sufficient consideration to support the new contract of insurance. On the other hand, if the policy had not lapsed, there was no consideration to support the assured's agreeing to a limitation of the coverage and to the clause as to incontestability. In support of the theory that the assured, having accepted a reinstatement, was bound thereby, two cases are cited: Supreme Ruler of Mystic Circle v. Darwin, 201 Ala. 687, 79 So. 259, and Neighbors of Woodcraft v. Hildebrandt, 98 Colo. 231, 54 P.2d 889.

The second syllabus in the Alabama case first cited is as follows: "If insurer [assured] had been properly suspended by defendant fraternal society, statements made in his application for reinstatement would be binding, otherwise not." We think that as far as this case goes is to simply hold that the fact the assured made an application for reinstatement is evidentiary of the fact of lapsation.

The second case, a Colorado case, we think goes no further, if as far as the Alabama case. In fact the Alabama case, according to our view, gives support to the idea that, there being no ground to suspend a member, such suspension of the member or his policy has no effect on the contract relations. The reinstatement application here makes no recital or express admission as was the case in Bankers Life & Loan Ass'n v. Chase, Tex.Civ.App., 114 S.W.2d 374.

It will be observed that Section 11 of the Constitution of defendant, which has been copied above, provides that all assessments shall be levied as ordered by the board of directors and the orders be entered upon the minutes. It may be that the assessment in question was so levied and so recorded. If so, the part of the record where this appears has not been called to our attention in the briefs of the parties. We have not found same in the statement of facts. It may be that the long course of procedure with reference to the policy here involved is some evidence that such an assessment was levied by the board of directors. However, if there was such levy the same was in the knowledge of defendant and easily susceptible of certain proof. We take it that a levy of an assessment was essential to the matured liability of the assured for the premium provided for in the policy.

The findings of the jury on the question as to kidney disease or heart disease being the cause of the assured's death are in hopeless conflict. It has been before pointed out that they found that Alfred Noble died of a form of heart disease; they did not find it was the proximate cause but they did find it was a contributing cause; they further found he died from a form of kidney trouble, but they found that it was not the proximate cause of his death, but same was a contributing cause of his death. These findings are so conflicting that they will not support a verdict. However, if the judgment is supported by other independent findings the conflict is immaterial. These findings were only relevant if there had been a legal lapsation of the policy and a reinstatement thereof. The facts found support the theory that there was no legal lapsation of the policy. Law of Special Issues, Speer, Sect. 435. Hence the verdict at least is sufficient to support the judgment as rendered.

Special issues No. 1 and No. 2 were as follows:

"Special Issue No. One: Do you find from the evidence that the defendant insurance company mailed notice of assessment properly stamped and addressed to Albert W. Noble to his post office address last known to the defendant as shown by the records in its office?" Answer: "Yes."

"Special Issue No. Two: Do you find from the evidence that such notice, if any you have found in answer to the foregoing special issue, was so mailed fifteen days prior to August 5, 1937?" Answer: "No."

Defendant made no objection to issues one and two as submitted by the court. It complains under propositions 4, 5, 6 and 6a that defendant was entitled to an affirmative submission of its defensive issues. The assignments on the proposition are predicated on the refusal of the court to give the following issues requested by the defendant:

"Defendant's Requested Issue No. Two: Do you find from the preponderance of

the evidence that the Border State Life Insurance Company mailed a notice to A. W. Noble of the due date of the August, 1937, assessment?"

"Defendant's Requested Issue No. Three: What date do you find from a preponderance of the evidence was fixed by the assessment notice, if you find said notice was mailed, as a final due date for payment of such assessment?"

"Defendant's Requested Issue No. Four: What date do you find from the preponderance of the evidence was the assessment notice for August, 1937, assessment mailed by the Border State Life Insurance Company, if you have found it was mailed?"

 This idea prevails throughout the three issues requested: that the mailing of a notice was sufficient. Now, to discharge its obligation to the assured, the notice should not only be mailed, but same should be properly addressed and stamped. We think that there was no error in the court's refusal of these issues. The issues neither singly nor taken collectively completely present an ultimate issue in the case.

 Defendant contends that there is a conflict preventing the rendition of a judgment herein between the findings on special issues three, four and five. Number three was as to whether the policy was lapsed after August 5, 1937, the finding in the negative; number four, that Albert W. Noble, after August 5, 1937, made application for reinstatement of his policy, and was answered in the affirmative; number five found that the defendant accepted such application for reinstatement. It is undisputed under the evidence that the assured did, after August 5, 1937, make application for reinstatement of his policy; likewise that defendant purported to grant such reinstatement. Now number three might have been objectionable as a submission of a question of law to the jury, but under the issues as made in this case it does not conflict with four and five.

We have heretofore discussed what, in our opinion, is the effect of the application and acceptance of reinstatement where there was no basis for the lapsation or suspension. If it was the submission of a legal question to the jury, it is immaterial. The other findings are ample to support the judgment entered. The judgment finds ample support in the findings

in substance that notice that the assessment claimed to be due on August 5th was not given at least fifteen days before that date.

It is ordered that the judgment of the trial court be in all things affirmed.